638 A.2d 437

Paulette T. LAURENTO, Personal Representative
of John J. Laurento, Appellant,

v.

ZONING HEARING BOARD OF the BOROUGH OF WEST
CHESTER and the Borough of West Chester.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1993.

Decided Feb. 25, 1994.

John E. Laurento, for appellant.

Jeffrey R. Sommer, for appellee, The Borough of West Chester.

Before DOYLE and SMITH, JJ., and KELTON, Senior Judge.

SMITH, Judge.

Paulette T. Laurento, personal representative of John J. Laurento, deceased (Laurento), appeals from the March 31, 1993 order of the Court of Common Pleas of Chester County which affirmed the decision of the Zoning Hearing Board of the Borough of West Chester (Board) denying Laurento's application for variances.[1] The issues raised on appeal are whether the Board abused its discretion or committed an error of law in denying Laurento's application for dimensional variances to convert his nonconforming warehouse to residential use on the basis that Laurento had not demonstrated unnecessary hardship; and whether the proposed plan furthers the Commonwealth's policy of converting nonconforming uses to conforming ones.

Laurento is owner of the property located at 537 Mechanic's Alley in the Borough of West Chester (Borough). The lot is approximately 199 feet by 83 feet, with a total square footage of approximately 16,400. Alleys border the property on three sides and property with a smaller warehouse that has been converted to residential use adjoins the fourth side. The lot has been improved with a two-story, L-shaped brick warehouse with approximately 18,000 square feet of floor space.

---

1. After Laurento's death on April 22, 1993, his son, John E. Laurento, appealed from the trial court's order. Laurento's widow and administratrix, Paulette T. Laurento, filed an application for substitution as appellant.

The main portion of the building was constructed in 1907 and predates zoning in the Borough. The property is in a Neighborhood Conservation District 2 (NC–2), Block Class B, as defined by the zoning provisions of the Borough Code (Code), §§ 112–18–112–19, in which the permitted uses are single-family detached, semi-detached, and attached dwellings; two-family detached, semi-detached, and attached dwellings; municipal uses; and family day-care homes. Laurento purchased the property in 1987 as a pre-existing, nonconforming use and used the building as a distribution, storage, and manufacturing plant for his tuxedo and formal wear business.

█ Upon Laurento's decision to retire from his business, he attempted to lease or sell the property for approximately one year without success. Laurento thereafter sought to convert the warehouse into twelve single-family attached dwellings, which required demolition of the more recent concrete-block addition of the "L" part of the warehouse, with the rectangular brick structure remaining. Laurento applied for variances from area and bulk requirements of the Code, along with variances from parking and landscaping requirements. He argued before the Board that the building was obsolete for industrial and warehouse use, and that being restricted to construction of five or six units would result in homes which would be too large to be marketable in that neighborhood and would have to be sold at significantly less than their worth. The Board determined that Laurento's proposal for twelve units violated various sections of the Code[2] and denied Lau-

2. The Board noted Code violations of Section 112–23.F, which prohibits buildings with single-family attached dwellings from exceeding six units in any single direction; Section 112–23.K, by having common parking closer than twenty feet to any single-family attached residential dwelling; Section 112–73.M, which prohibits parking spaces from being located in front yards; Section 112–73.N, which prohibits parking spaces within five feet of lot lines; Section 112–73.Q, which prohibits parking designed such that vehicles must back into a public street; Section 112–21, which limits to five the number of single-family attached dwellings which may be built on lots such as the one in question; Section 112–23.O, which requires landscaping; Section 112–73.R, which requires that parking areas be screened and landscaped and requires curbing between parking areas and the street; and Sec-

rento's application, concluding that the only hardship he demonstrated was an economic one which is insufficient to justify granting the variances. The trial court affirmed the Board.[3]

Laurento argues that he has demonstrated unnecessary hardship thereby entitling him to dimensional variances. The reasons for granting a variance must be substantial, serious and compelling. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). Variances should be granted sparingly and only under exceptional circumstances. *O'Neill v. Zoning Board of Adjustment*, 434 Pa. 331, 254 A.2d 12 (1969). A variance should not be granted simply because such a grant would permit the owner to obtain a greater profit from the use of the property. *A.R.E. Lehigh Valley Partners v. Zoning Hearing Board of Upper Macungie Township*, 139 Pa.Commonwealth Ct. 361, 590 A.2d 842 (1991).

In order to qualify for a variance, an applicant must establish that (1) an unnecessary hardship stemming from unique physical circumstances or conditions of the property will result if the variance is denied; (2) because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship has not been created by the applicant; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief. *Township of Birmingham v. Chadds Ford*

tion 112–23.E, which requires that single-family attached dwellings be designed and constructed in staggered groups.

3. Where, as here, no additional evidence is presented to the trial court, this Court's scope of review is limited to determining whether the Board committed an error of law or an abuse of discretion. *Whitpain Township Board of Supervisors v. Whitpain Township Zoning Hearing Board*, 121 Pa.Commonwealth Ct. 418, 550 A.2d 1355 (1988), *appeals denied*, 525 Pa. 639, 578 A.2d 932 (1990). The Court may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

*Tavern, Inc.,* 132 Pa.Commonwealth Ct. 312, 572 A.2d 855 (1990); *see* Section 912 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10912.

To show unnecessary hardship, an applicant must prove that either (1) the physical characteristics of the property are such that it could not in any case be used for any permitted purpose or that it could only be arranged for such purposes at prohibitive expense, or (2) the characteristics of the property are such that the lot has either no value or only distress value for any purpose permitted by the ordinance. *A.R.E. Lehigh Valley Partners; Zoning Hearing Board of Indiana v. Weitzel,* 77 Pa.Commonwealth Ct. 108, 465 A.2d 105 (1983). The applicant must show that the hardship is unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district. *Valley View Civic Ass'n.* Mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. *Id.*

Where a condition renders a property almost valueless without the grant of a variance, this Court has held that unnecessary hardship has been established. *Serban v. Zoning Hearing Board of Bethlehem,* 84 Pa.Commonwealth Ct. 558, 480 A.2d 362 (1984). In the present matter, the Board correctly determined that Laurento failed to demonstrate the requisite unnecessary hardship to justify a variance and instead demonstrated mere economic hardship. Contrary to Laurento's assertions, his hardship arises from the impact of zoning regulations on the entire district and is not due to unique physical characteristics peculiar to his property.[4] Laurento failed to establish that his property is subject to any

4. Laurento cites *Whitpain Township* for the proposition that a pre-existing nonconforming use itself constitutes the physical circumstances which make a property uniquely different from others in the district, a proposition which can also be found in *Chadds Ford Tavern.* However, these cases are inapplicable because they involved *expansion* of a pre-existing nonconforming use, a situation not present here. Laurento seeks to convert a pre-existing nonconforming use to a conforming use, albeit with substantial variances from the Borough's zoning ordinance.

unique physical characteristics, nor has he shown that the property has either no value or only distress value for any purpose permitted by the ordinance.

The present matter is similar to *Immordino v. Zoning Hearing Board of Morrisville Borough,* 65 Pa.Commonwealth Ct. 79, 441 A.2d 818 (1982), in which this Court upheld the denial of a variance request. In that case, the landowners sought to convert a dimensionally nonconforming structure into a multi-family dwelling consisting of four units. The ordinance in question required 2000 square feet of lot area per dwelling, or a total of 8000 square feet for the building in question. Since the landowners' property contained only 7,500 square feet, the building was nonconforming as to its structure and the landowners were precluded by the ordinance from increasing the degree of nonconformity. This Court concluded that the landowners were affected no differently by the ordinance than were other owners of multi-family dwellings within the district, and the only hardship they would sustain would be a financial one.

In Laurento's case, the Code requires that single-family attached homes have a minimum lot size of 3000 square feet per unit, but Laurento's proposed plan calls for only 1366 square feet for each unit. Furthermore, Section 112–23.F of the Code limits the number of attached dwellings in this case to six, whereas Laurento proposes twelve single-family attached dwellings. He contends that without variances from these provisions, each home would have a floor area square footage that would be too large to be marketable in this neighborhood. However, this is precisely the type of economic hardship that this Court rejected in *Immordino* as insufficient to satisfy the standard of unnecessary hardship.[5]

5. Further, Laurento clearly did not meet the requirement that the variances sought will represent the minimum variance that would afford relief. Laurento applied for a number of variances which deviated substantially from the ordinance requirements, among them the request for twelve units. As noted by the trial court, Laurento is seeking to obtain the highest and the best use for his property. However, "highest and best use" is not a variance standard. *Vagnoni v.*

Laurento also contends that he demonstrated unnecessary hardship because he would need to demolish the building and reconstruct it in order to comply with the zoning requirements, relying upon *Davis v. Zoning Board of Adjustment,* 78 Pa.Commonwealth Ct. 645, 468 A.2d 1183 (1983). In *Davis,* the zoning board found that a property could not conform with the applicable zoning restrictions absent demolition and reconstruction and concluded that unnecessary hardship existed. This Court agreed, stating that where premises cannot be converted into a permitted use without demolition or extensive reconstruction, more than mere economic hardship exists. The instant matter is distinguishable from *Davis* because Laurento can conform with the zoning restrictions without demolition and reconstruction. Further, in *Davis* it was undisputed that without a variance the property would have to be demolished and rebuilt.

Finally, Laurento argues that the proposed plan furthers the Commonwealth's policies of converting nonconforming uses to conforming ones and rehabilitating deteriorating structures that have become public hazards. However, it is apparent that application of these policies cannot be made in such a manner as to render wholly ineffective the reasonable dimensional requirements of zoning ordinances. Laurento cites *Hanna v. Board of Adjustment,* 408 Pa. 306, 183 A.2d 539 (1962), in which the Supreme Court articulated that nonconforming uses represent conditions which should be reduced to conformity as speedily as is compatible with the law. Nonetheless, *Hanna* is inapplicable sub judice because the landowner in that case sought to convert a nonconforming use to a new nonconforming use, whereas Laurento seeks to convert a nonconforming use to a conforming use that is substantially dimensionally nonconforming.

The requirements of the Borough's zoning ordinance do not prevent Laurento from bringing his property into conformity with the ordinance. Rather, the ordinance merely limits the manner in which Laurento may do so. That Laurento would

*Zoning Hearing Board of Exeter Township,* 74 Pa.Commonwealth Ct. 431, 459 A.2d 1361 (1983).

suffer diminished profits as a result does not serve as grounds for issuance of a variance. *Eureka Stone Quarry, Inc. Appeal,* 115 Pa.Commonwealth Ct. 1, 539 A.2d 1375, *appeals denied,* 520 Pa. 599, 552 A.2d 253 (1988). Further, this situation is quite different from *Serban* and *Price v. Zoning Board of Adjustment,* 44 Pa.Commonwealth Ct. 95, 403 A.2d 196 (1979), in which the respective boards found that the properties would be practically valueless without a variance and that the properties constituted health and safety hazards caused by vacant, deteriorating buildings. This Court having found no error of law by the Board in the matter sub judice and that its findings are supported by the record, the trial court's order is affirmed.

## ORDER

AND NOW, this 25th day of February, 1994, the order of the Court of Common Pleas of Chester County dated March 31, 1993 is affirmed.