**Louis P. VITTI, an individual and Louis P. Vitti & Associates P.C., Appellants,**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH and Bethlehem Haven.**

**900 FIFTH AVENUE ASSOCIATES, Howard Bernstein, Arnold Freidman, Edward Freidman, Thea Bernstein and the Manufacturers Life Insurance Company (U.S.A.)**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PITTSBURGH and Bethlehem Haven.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.

Decided April 9, 1998.

Louis P. Vitti, appellant, pro se.

Gail L. Gratton, Pittsburgh, for appellee, Bethlehem Haven.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Louis P. Vitti individually and through his business, Louis P. Vitti & Associates, P.C. (collectively, Vitti), appeals from an order of the Court of Common Pleas of Allegheny

County which affirmed a decision of the Zoning Board of Adjustment of the City of Pittsburgh (Board) which granted variances and a special exception to Bethlehem Haven.

Bethlehem Haven is a non-profit organization devoted to aiding the homeless population of the City of Pittsburgh. For approximately fourteen years, Bethlehem Haven has provided nighttime shelter to homeless women in the basement of the Smithfield United Church located at 620 Smithfield Street in "downtown" Pittsburgh. Bethlehem Haven, along with two other homeless providers, Community Human Services and Wellspring, determined that, in order to help resolve the problems of homelessness within the City, a daytime program for the women needed to be initiated. Thus, in an effort to expand its operations in the City, Bethlehem Haven located a larger facility at 902–904 Fifth Avenue, situated in the "uptown" district of Pittsburgh, where it desired to move its shelter and where various counseling services could be consolidated as part of a collaborative effort to address the homeless problem. This property consists of a three-story vacant building formerly used as a retail sporting goods store and is located in an area of the City zoned as a "C–4 Commercial Zone."

This litigation commenced when Bethlehem Haven and Jack Linzer, the owner of the subject property at the time, filed an Occupancy/Building permit with the Office of the Zoning Administrator. The application stated that Bethlehem Haven desired to change the use of the premises from a retail clothing and sporting equipment store to a lodging facility for up to 50 women. The application specified the intended use of the property as follows:

> Existing 3–story structure, 1st floor coffee shop (open to the public), drop-in reception center, kitchen and dining facilities for the lodgers, 2nd floor offices and meeting rooms, 3rd floor lodging facilities for 50 women.

(Application for Occupancy/Building Permit; Reproduced Record (R.R.) at 9a.)

The Application for Occupancy/Building permit was initially rejected by the City Zoning Administrator because the property, which is 5,740 square feet in size, did not

have sufficient square footage to satisfy the 11,600 square-foot requirement specified in Section 957.04(2)(A) of the Pittsburgh Zoning Code (Pittsburgh Code), which provides as follows:

> **§ 957.04 Area.**
>
> For the uses listed in § 957.02 [ (relating to a C–4 Commercial Zone) ], on each unimproved lot and on each lot upon which a structure hereafter is erected or enlarged or used, there shall be provided and maintained a lot area, yards and other open spaces not less than prescribed in this section.
>
> . . . .
>
> 2. Lot area for main uses not listed in item 1 above [ (relating to apartment hotels, hotels and boarding houses of three-stories or more) ].
>
> > A. With sleeping rooms not in excess of 600: 5,000 square feet plus 300 square feet for each sleeping room in excess of three, but not in excess of 200, plus 515 square feet for each sleeping room in excess of 200.

Pittsburgh Code § 957.04. Also cited as a reason for the initial rejection of the application was that the subject property had no on-site parking spaces when 24 parking stalls are required by Section 989.01 of the Pittsburgh Code for the uses proposed in the application. The number of required parking spaces is determined by a combination of the use and square footage of the property as delineated by a table set forth under Section 989.01 of the Pittsburgh Code.

Bethlehem Haven subsequently filed an appeal to the Board requesting variances from Sections 957.04(2)(A) and 989.01 of the Pittsburgh Code, as well as a special exception pursuant to Section 909.06(d)(1). A hearing was held before the Board on January 25, 1996, and, on June 28, 1996, the Board ultimately granted Bethlehem Haven's request for variances and a special exception on the condition that Bethlehem Haven "maintain daytime programming, counseling, offices, and meeting rooms for the lodgers." (Board's Decision, 6/28/96, at 6; R.R. at 54a.) Vitti subsequently appealed to the Court of Common Pleas of Allegheny County, which

ultimately affirmed the Board's decision by opinion and order dated April 4, 1997.[1] This appeal by Vitti ensued.

■ On appeal,[2] Vitti asserts two principal arguments for our consideration: (1) that the Board and Court of Common Pleas erred by characterizing the use of the subject premises as a homeless shelter and that it is truly a "group care facility" which is not a permitted use in the C–4 Commercial zoning district in which the property is situated, and (2) that Bethlehem Haven did not demonstrate an unnecessary hardship sufficient to justify the granting of a variance and that the granting of the special exception would be detrimental to the neighboring community.

In concluding that the combined use of the property as a homeless shelter, counseling service, and coffee shop was a permitted use under the provisions of the Pittsburgh Code, the Board reasoned as follows:

> The proposed facility has been presented to the Board as a combination of lodging facility, educational and counseling services, and restaurant. Those are permitted uses in a C–4 district and thus do not require a variance. An issue may exist as to whether the proposed development as a whole constitutes a separate use, although community facilities for the homeless is not a defined use in the ordinance. Thus, a particular use that is more specifically described may result in a use that is excluded by the ordinance. *During the proceedings, however, no one challenged the characterization offered by the Zoning Administrator and, thus, for purposes of this record, the proposed uses appear to be permitted.*

(Board's Decision, 6/28/96, at 5; R.R. at 53a.) (Emphasis added.)

■ Vitti did not argue before the Board that the proposed use of the facility as a "combination of lodging facility, educational and counseling services, and restaurant" was not a permitted use in the C–4 Commercial Zone, nor did he argue to the Board that the proposed use was truly that of a "group care facility." Instead, Vitti raised these arguments for the first time on appeal to the Court of Common Pleas. We have held that where, as here, a party fails to challenge whether the proposed use is a permitted use before the Board, the party has waived that issue and may not subsequently raise the argument that the proposed use is not a permitted one within the zoning district. *Wagner v. City of Erie Zoning Hearing Board,* 675 A.2d 791 (Pa.Cmwlth.1996), *petition for allowance of appeal denied,* 546 Pa. 672, 685 A.2d 549 (1996). Consequently, in this case, we agree with the Common Pleas Court that Vitti may not now contend that the use of the subject premises as a lodging house is not a permitted use in the C–4 Commercial Zone, nor may he now assert that the proposed use is actually a "group care facility," which is not permitted in that district.[3]

■ Vitti also contends that the Board erroneously granted variances from the dimensional and parking-space requirements specified in Sections 957.04(2)(A) and 989.01 of the Pittsburgh Code and a special exception from the parking-space requirements under Section 909.06(d)(1) of the Code. In particular, Vitti contends that Bethlehem Haven failed to adequately demonstrate an "un-

---

1. On appeal to the Court of Common Pleas, this case was consolidated with a similar appeal filed by 900 Fifth Avenue Associates.

2. Where, as in the instant matter, the Common Pleas Court has taken no additional evidence, our standard of review is limited to determining whether the Board abused its discretion, committed an error of law or made findings of fact not supported by substantial evidence. *Pittsburgh Trust for Cultural Resources v. Zoning Board of Adjustment,* 145 Pa.Cmwlth. 503, 604 A.2d 298 (1992), *petition for allowance of appeal denied,* 538 Pa. 618, 645 A.2d 1320 (1994).

3. We further note, as Bethlehem Haven points out in its brief, that the proposed use of the subject property would most likely be a permitted use as a "rescue mission" pursuant to Section 957.02(53) of the Pittsburgh Code. Although the term "rescue mission" is not specifically defined under the Code, the proposed use of the property as a shelter for homeless women with counseling services comports with the ordinary meaning or dictionary definition of that term. *See Webster's Third New International Dictionary* 1930 (3d ed.1986) (defining "rescue mission" as "a city mission established to help persons esp. of low income who are unable to help themselves and are in desperate need of moral and spiritual rehabilitation").

necessary hardship" which is required to obtain a variance pursuant to Section 909.05 of the Pittsburgh Code.[4]

With respect to this issue, the Board concluded as follows:

> Recognizing the relationship between locating such a facility in proximity of the downtown area and the dimensional constraints present by older buildings and the severe cost constraints in servicing indigent individuals, on the balance it seems appropriate to grant the variance ...

(Board's Decision, 6/28/96, at 6; R.R. at 54a.) After a careful review of the relevant case law and record in this case, we must agree with the Board's conclusion in this regard.

■ In order to establish that an unnecessary hardship exists, an applicant for a variance must prove that either (1) the physical characteristics of the property are such that it could not be used in any case for any purpose permitted in that zoning district or that it could only be used for a permitted purpose except at prohibitive expense, or (2) the characteristics of the property are such that the lot has either no value or only

distress value for any purpose permitted by the zoning ordinance. *Laurento v. Zoning Hearing Board,* 162 Pa.Cmwlth. 226, 638 A.2d 437 (1994); *see also Isaacs v. Wilkes–Barre City Zoning Hearing Board,* 148 Pa. Cmwlth. 578, 612 A.2d 559 (1992).

In *Wagner v. City of Erie Zoning Hearing Board,* this Court affirmed the granting of a dimensional variance, as well as a variance from parking-space requirements, where the subject property (a former motel) had remained vacant for several years and had subsequently been purchased for the purpose of providing shelter for low income residents and homeless persons. We held that under those existing circumstances, *i.e.* the vacancy of the building and the difficulty with which it sold, evidenced an unnecessary hardship sufficient to warrant the granting of the variances. In so holding, we stated as follows:

> Although unnecessary hardship usually relates to the physical characteristics of the land, at times, the unnecessary hardship can relate to the building itself. Where the use of property for any purpose is possible only through extensive recon-

---

4. It should be noted that the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11201, and the variance criteria specified therein, does not apply to the City of Pittsburgh. *E.g., North Point Breeze Coalition v. Pittsburgh,* 60 Pa.Cmwlth. 298, 431 A.2d 398 (1981). Rather, the relevant provisions relating to the granting of a variance, which are similar to those of the MPC, are contained in Section 909.05 of the Pittsburgh Code, which provides as follows:

**§ 909.05 Variances**

(a) Upon appeal from a decision of the Administrator in accordance with the provisions of this Zoning Ordinance and the rules of procedure of the Board, the Board shall have the power to vary or adjust the strict application of the requirements of this Zoning Ordinance for only a use permitted in the district where the lot is located, in the case of an exceptionally irregular, narrow, shallow or steep lot or other exceptional physical condition not provided for in the district regulations or as a special exception, where strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or structures involved, but in no other case. No variance in the strict application of any provisions of this Zoning Ordinance shall be granted by the Board unless it finds:

(1) That there are special circumstances or conditions, fully described in the findings of the Board, applying to the land or structure for which the variance is sought, which circumstances or conditions:

A. Are peculiar to the land or structure and do not apply generally to land or structures in the neighborhood, and have not resulted from any act of the appellant or his predecessors in title subsequent to the adoption of this Zoning Ordinance, whether in violation of the provisions hereof or not; and

B. Are such that strict application of the provisions of this Zoning Ordinance would deprive the appellant of the reasonable use of such land or structure;

(2) That the variance to be granted by the Board is:

A. For a use permitted in the district;

B. One that will require the least modification of the prescribed regulation; and

C. The minimum variance that will accomplish this purpose; and

(3) That the granting of the variance shall:

A. Be in harmony with the general purposes and intent of § 901.06;

B. Be in accordance with the general or specific rules herein contained; and

C. Be not injurious to the neighborhoods, or otherwise detrimental to the welfare of the people at large....

Pittsburgh Code § 909.05.

struction or demolition of the building, it has been held sufficient to establish an unnecessary hardship. *Logan Square Neighborhood Association v. Zoning Board of Adjustment* [32 Pa.Cmwlth. 277], 379 A.2d 632 (Pa.Cmwlth.1977). In a case similar to the facts in the instant case, *Davis v. Zoning Board of Adjustment* [78 Pa.Cmwlth. 645], 468 A.2d 1183 (Pa. Cmwlth.1983), we upheld the grant of a variance from the lot area requirements to allow a property owner to rehabilitate and use an abandoned and vacant four-story apartment building located in a residential zone as a seventeen-unit multi-family dwelling. We held that because the premises could not conform with the zoning restrictions absent demolition and reconstruction, an unnecessary hardship existed. *Id.*; *see also Zoning Hearing Board of the Township of Indiana v. Weitzel* [77 Pa. Cmwlth. 108], 465 A.2d 105 (Pa.Cmwlth. 1983) (holding that where the only options available to a property owner without a use variance were to either convert his three-story school building into a single-family dwelling or demolish the building and subdivide the lot, more than "mere economic hardship" existed and evidence of unnecessary hardship was established).

*Id.* at 799. Our holding in *Wagner* was partly based upon the recognition that, where blighted or dilapidated conditions exist in urban areas, and where the applicant for a variance has undertaken efforts to remediate or renovate those areas for a salutary, productive purpose, a slight relaxation, or less stringent application, of the variance criteria may be the only way the subject property will be put to any beneficial use.

Additionally, in *Price v. Zoning Board of Adjustment,* 44 Pa.Cmwlth. 95, 403 A.2d 196 (1979), we also recognized that an applicant for a variance has adequately demonstrated unnecessary hardship where the property would be, as a practical matter, essentially worthless absent the granting of a variance, stating as follows:

It is undisputed here that the building could not reasonably be moved, nor could the lot dimensions be expanded. And even the appellant concedes that without a variance the property would be practically valueless. We believe, therefore, that this is sufficient evidence of hardship.

*Id.* at 197.

█ Similarly, the subject property in the instant case has been vacant for over seven years, and, except as receptacle for storing second-hand clothing, the building has not been used for any productive use. The building is dilapidated and has essentially sat dormant as valueless real estate over the years. Although this area of the City has apparently experienced a revitalization recently, the record indicates that the immediate area of the City in which the property is located is generally downtrodden, that a number of abandoned buildings exist there, and that it has experienced socioeconomic difficulties since it has ceased to be the wholesale district of the City. Bethlehem Haven has now acquired the building as part of a collaborative [5] and integrated effort to utilize the property for a combination of commercial and humanitarian purposes.

As the Board recognized, a variance is the only way for the subject property to be used for virtually any permissible productive purpose in the C–4 Commercial Zone where it is located. This conclusion is supported by the Board's Finding of Fact No. 17, where the Board found that "[a]lmost any use of the structure and narrow zoning lot would require parking and density variances," which we find to be supported by the record in this case. (Board's Opinion, 6/28/96, at 3; R.R. at 51a.) We further note that unnecessary hardship is also evidenced by the fact that the cost of the demolition and reconstruction work necessary for strict compliance with the zoning ordinance would be astronomical and commercially impracticable. *See Logan Square Neighborhood Association v. Board of Adjustment,* 32 Pa.Cmwlth. 277, 379 A.2d 632 (1977).

---

**5.** Representatives of City Council, the Urban Redevelopment Authority, Catholic Diocese of Pittsburgh, Duquesne University, various community action groups, and even neighbors of the subject

property, all testified before the Board as to their support, including financial support, for the project and the need for community services in this particular area of the City.

Vitti contends that there are "literally dozens of permitted uses" to which the property could be put and that, in the absence of a showing that the property may not be used for **any** permitted purpose, a variance should not have been granted. The record, however, does not support this assertion. Vitti further suggests in this regard that the property could still be used as a warehouse or storage facility. However, to say that the use of this three-story building, located in the heart of uptown Pittsburgh, is actually being "utilized" in any productive manner as merely a large makeshift warehouse is somewhat disingenuous. Furthermore, in support of this argument, Vitti states in his brief that "[t]he fact that the property has remained vacant for several years has no bearing on the decision process." (Vitti's Brief at 12.) This statement, however, is simply incorrect. *See Wagner.* As noted above, no one has sought fit to utilize or purchase this property for commercial purposes for at least seven years, and having it used as a combination coffee shop, homeless shelter, and education and counseling center for the less fortunate is certainly more beneficial to the City than to have the property remain forever vacant and dilapidated.[6]

Therefore, because Bethlehem Haven demonstrated that a variance is necessary in order for the property to be used for virtually any productive purpose where it is located and that exorbitant expenditures would be necessary for strict compliance with the zoning provisions at issue, and considering our limited standard of review and that a less stringent application of the variance criteria specified in Section 909.5 of the Pittsburgh

Code is called for under the unique circumstances of this case, we hold that the Board did not err in concluding that Bethlehem Haven adequately demonstrated the existence of unnecessary hardship justifying the grant of a variance.

■ Vitti also contends that the Board erred by granting a special exception to Bethlehem Haven with regard to the required number of parking spaces. Specifically, Vitti argues that the proposed use "is detrimental to the general welfare of the neighborhood," "will certainly be detrimental and injurious to the neighborhood," and will "impede the normal and orderly development and improvement of surrounding property for uses permitted in the district." (Vitti's Brief at 14–15.)

■ The applicant for a special exception has the initial burden of demonstrating compliance with the specific objective requirements for that exception as specified in the ordinance. *Bray v. Zoning Board of Adjustment,* 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980). Once the applicant has satisfied this initial burden, the burden shifts to the objector to establish that the proposed exception would be detrimental to the public health, safety and welfare. *Id.*

With respect to the special exception,[7] the Board ultimately concluded as follows:

In the present case, the Board finds that [Bethlehem Haven] has met the burden of persuasion required for the grant of a special exception to allow for the modification of the parking requirements.[8] The individuals who will use the facility do not own

---

6. As one individual, Tonya Payne, an Executive Assistant to the City councilman who represents the district in which the property is located, stated on the record before the Board,

We're in favor of seeing Bethlehem Haven sit in that building versus that building sitting there forever unoccupied. You know, it doesn't make sense to let it sit there. No one's buying it to do any retail or have any commercial thing going on there, so [Bethlehem Haven is] asking to do something with the building. They're going to renovate it, spend money and also provide a needed service for people who actually need that service.

(Notes of Testimony, 1/25/96, at 49; R.R. at 153a.)

7. Section 989.05(a)(1) of the Pittsburgh Code provides as follows:

(a) Special exceptions by Board of Adjustment.
(1) Automobile parking space requirements may be modified by the Board in districts other than S–A, RP, CP or AP, where in the particular instance such modification will not be inconsistent with the purpose and intent of this Zoning Ordinance as prescribed in § 909.06(d)(1).

8. The record also indicates that the subject property is located across the street from a rather sizeable public parking garage.

cars and the location is well serviced by public transportation. The Board finds that there is no evidence that the waiver of parking requirements will be detrimental to the neighborhood.

(Board's Opinion, 6/28/96, at 4; R.R. at 52a.) This conclusion is supported by the record, and, given our limited standard of review in such matters, we cannot say that the Board abused its discretion or committed an error of law in reaching this result.

Furthermore, it is obvious from Vitti's arguments described above that his principal contention with regard to the granting of the special exception is that the use of the property as a homeless shelter for women is not a permitted use in the C–4 Commercial Zone. As discussed above, however, we believe that such a use is permitted within the language of the Pittsburgh Code, and we stress that the "type" of resident or applicant has never been a proper basis for rejecting an application for a variance or special exception. The Board has imposed conditions, *i.e.*, daytime programs for education and counseling as well as the availability of offices and meeting rooms, which are designed to alleviate Vitti's concerns.[9]

Order affirmed.

### ORDER

**NOW**, April 9, 1998, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

LEADBETTER, J., did not participate in the decision in this case.

---

9. As a final note with respect to Vitti's concerns, Bethlehem Haven presented the testimony of Dr. Bruce Arrigo, a Professor of Sociology at Duquesne University and faculty member of the Center for Social and Public Policy of Duquesne University, who testified that there is no correlation between "any act of crime or deviance" and the proposed project, and that housing homeless women in such a facility would not, in his opinion, "breed crime." (Notes of Testimony, 1/25/96, at 33; R.R. at 137a.).