**NORTH BETHLEHEM NEIGHBORS GROUP and Scott and Shirley Gerhart, husband and wife, and Clare and Anne Nestor, husband and wife, Appellants,**

**v.**

**CITY OF BETHLEHEM ZONING HEARING BOARD, Wawa, Inc., Joseph Krem and Sondra Krem, husband and wife and Richard LaBarre and Sandra LaBarre, husband and wife North Bethlehem Neighbors Group and Scott and Shirley Gerhart, husband and wife, and Clare and Anne Nestor, husband and wife,**

**v.**

**CITY OF BETHLEHEM ZONING HEARING BOARD, Wawa, Inc., Joseph Krem and Sondra Krem, husband and wife, and Richard LaBarre and Sandra LaBarre, husband and wife Appeal of: Wawa, Inc.**

Commonwealth Court of Pennsylvania.

Argued Dec. 2, 2002.

Decided Jan. 14, 2003.

Reargument Denied March 13, 2003.

James F. Preston, Bethlehem, for appellant.

Joseph A. Fitzpatrick, Jr., Center Valley, Wawa, Inc., Edward J. McKarski, Bethlehem, J. Krem and S. Krem, for appellee.

BEFORE: COLINS, President Judge, SIMPSON, Judge, MIRARCHI, JR., Senior Judge.

OPINION BY Judge SIMPSON.

North Bethlehem Neighbors Group and other neighboring residents (Objectors) appeal the order of the Court of Common Pleas of Lehigh County (trial court) affirming the decision of the City of Bethlehem Zoning Hearing Board (Board) granting Wawa, Inc.'s (Applicant) request for a variance to construct a convenience store with gas fueling pumps. We affirm.

Applicant is the equitable owner of approximately 2.4 acres (Subject Property), at the corner of Eighth Avenue and Schoenersville Road in the City of Bethlehem. The Subject Property consists of two lots, one owned by Joseph and Sondra Krem (Krem Lot) and the other owned by Richard and Sandra LaBarre (LaBarre Lot).[1] The Subject Property, which is triangular in shape, is located in the City's C–M office research center district. This district is designated for large-scale integrally planned and designed office facilities. *See* Section 1314.01 of the Zoning Ordinance of the City of Bethlehem (Ordinance). The minimum lot size in the district is 10 acres. The LaBarre Lot never consisted of ten acres.

Applicant proposes to erect a convenience store and gas station, which will provide: (1) 75 parking spaces; (2) the front end lined with a combination of lawn and trees; (3) all generated trash stored inside the facility; (4) sidewalks around the perimeter; (5) two depressed curb access routes from the highway, as opposed to the existing nine; (6) no parking spaces for large trucks and tractor trailers; (7) 24 hour a day, seven day a week operation; (8) lighting consisting of "down lights" and lighting under a canopy; (9) square footage of 5596 square feet; (10) deliveries conducted during off peak hours; (11) no tractor trailer deliveries; (12) six gas pumps, with no diesel fuel; (13) two to eight employees at the site; and (14) public water and sewer service.

The Board found, in general, the proposal is less objectionable in terms of noise, smoke, dust, fumes, vapors, gases, heat, odor, glare and vibration, than currently existing uses. The proposal would also improve the appearance of the Subject Property. In addition, the proposed use attracts traffic from a passing stream of vehicles, making the anticipated traffic increase negligible.

Surrounding uses include major area employers, banks, apartments, a convenience store, drug stores and the Westgate Shopping Center. Martin Towers, the large office complex and headquarters owned by Bethlehem Steel, is located south of the Subject Property, and, across the street, there are residential properties.

Applicant requested a special exception or, in the alternative, a variance to merge

---

1. Originally, the LaBarre Lot was a bar and restaurant. Subsequently, other uses have included a ski shop, a real estate office, a real estate school and a chiropractic office.

The Krem Lot has been used continuously for 35 years as a business including garage repair, welding, used cars, front end alignment, body work, car repair, towing and general mechanics. Previously, the business included a gas station, lubrication and washing services, billboard signs, garage bays, vending machines, oil dispensers, tire storage, hoagie stand and car sales. In addition, a retail business on the Krem Lot sold seafood, flowers and Christmas trees.

the Krem Lot and the LaBarre Lot and implement its proposal.[2]

Ultimately, the Board granted the use variance. Additionally, the Board adopted the zoning officer's determination that the Subject Property was nonconforming as to the minimum lot size. Objectors appealed, and the trial court, in a thorough and thoughtful opinion by the Honorable Lawrence J. Brenner, affirmed the grant of the use variance. The trial court essentially agreed that no dimensional variance from the minimum lot requirement was necessary because the Subject Property consists of two nonconforming lots. This appeal followed.[3]

## I.

Objectors first assert no use variance is justified because the hardship results from regulations applicable to the entire C M district, as distinguished from a hardship unique to the Subject Property. We disagree.

■ To show unnecessary hardship an applicant must prove that either: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property is valueless for any purpose permitted by the zoning ordinance. *SPC Co., Inc. v. Zoning Bd. of Adjustment of the City of Phila.*, 773 A.2d 209 (Pa.Cmwlth.2001). The applicant must show the hardship is unique

or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on the entire district. *Laurento v. Zoning Hearing Bd. of the Borough of West Chester*, 162 Pa. Cmwlth. 226, 638 A.2d 437 (1994). Mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. *Id.* Where a condition renders a property almost valueless without the grant of a variance, unnecessary hardship is established. *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of the City of Phila.*, 787 A.2d 1123 (Pa.Cmwlth.2001); *Laurento; Serban v. Zoning Hearing Bd. of Bethlehem*, 84 Pa.Cmwlth. 558, 480 A.2d 362 (1984).

■ Here, the Board correctly determined Applicant demonstrated the requisite hardship to warrant a use variance. The purpose of the C–M district was to provide large-scale integrally planned and designed office facilities, research and similar uses including testing and experimental laboratories and accessory facilities. Section 1314.01 of the Ordinance. The minimum lot requirement is 10 acres. Section 1318.01 of the Ordinance; Appendix A–4. The C–M district permits the following uses:

(1) laboratory and appurtenant structures; (2) building for lecture rooms and offices in connection therewith; (3) library; (4) structure erected for experi-

---

2. Initially, the Board granted Applicant's special exception request to expand the existing nonconforming use and denied Applicant's special exception request to change one nonconforming use to another.

On appeal, the trial court reversed the grant of the special exception to expand the nonconforming use and affirmed the denial of the request to change from one nonconforming use to another. The trial court remanded for findings on Applicant's variance request.

3. Because no additional evidence was presented since the Board's decision, our review is limited to determining whether the Board committed a manifest abuse of discretion or an error of law. *Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 689 A.2d 225 (1997).

mental or other purposes; (5) pilot plant and appurtenant structures; (6) warehouse and storage facilities appurtenant to the foregoing; (7) garage for movable equipment, trucks and cars operated in connection with the foregoing; (8) living quarters for personnel and their families; (9) catering, cafeteria and restaurant equipment and facilities; (10) experimental agricultural operation and the building necessary therefore; (11) commercial communication towers and antennas.

Section 1314.02(a) of the Ordinance. In addition, a "planned office commercial development" is permitted upon review and recommendation by the city planning commission. Section 1314.02(b) of the Ordinance.

The C–M zoning district was created to consolidate surrounding properties with Martin Towers. Board's Dec. of November 16, 2001, Finding of Fact (F.F.) No. 65. This consolidation, however, never occurred. F.F. No. 66. As a result, the properties in the district will never be developed in accordance with the regulations. F.F. No. 67. Moreover, the Subject Property is the only remaining undeveloped parcel in the district and, therefore, it is not possible to develop it for a permitted use. F.F. Nos. 69, 71. The Subject Property's irregular, triangular shape intensifies the hardship. F.F. No. 64. These findings are supported by the testimony of Samuel A. Guttman, the director of city planning. Because these findings are supported by substantial evidence, the Board properly determined Applicant will suffer unneces-

sary hardship if the use variance is denied.

## II.

◼ Additionally, the Subject Property's size renders compliance with the Ordinance impossible. Where, as here, a lot is too small to satisfy minimum lot requirements and cannot conform by merging lots or subdividing a larger tract, enforcement of the ordinance will sterilize the land, creating the necessary hardship warranting the grant of a variance. *West Goshen Township v. Crater*, 114 Pa.Cmwlth. 245, 538 A.2d 952 (1988); *Application of BCL, Inc.*, 36 Pa.Cmwlth. 96, 387 A.2d 970 (1978). *See also* 2 Robert S. Ryan, *Pennsylvania Zoning Law and Practice* § 6.3.3 (1970).

The Board found the proposed merger of the Krem Lot and the LaBarre Lot creates a parcel which does not comply with the minimum lot requirement. F.F. No. 62. In addition, the Subject Property is the only remaining parcel in the zoning district not fully developed or under construction. F.F. No. 73. Therefore, "[a]s a result of development in the zoning district, the amount of land available for further development is restricted, and there is no possibility of purchasing additional property to meet the minimum lot size requirement in the zoning district." F.F. No. 71. Consequently, the Subject Property is too small to satisfy the minimum lot requirement, and it cannot conform to the minimum lot requirement by merger or subdivision. Therefore, a variance from the minimum lot requirement is warranted.[4]

---

4. The trial court concluded no variance from the minimum lot requirement was necessary because the Subject Property is comprised of two nonconforming lots and the proposed merger would create a larger nonconforming lot. We agree with the trial court that Appli-

cant is entitled to relief; however, we affirm on other grounds. *Reynolds v. Zoning Hearing Bd. of Abington Township*, 134 Pa.Cmwlth. 382, 578 A.2d 629 (1990) (although trial court affirmed the zoning board on an incorrect rationale, we may affirm the court's order

Objectors argue Applicant is not entitled to a dimensional variance because it did not file a separate application requesting that relief. In its notice of appeal, however, Applicant requested dimensional relief. Reproduced Record 8a–9a. The issue of dimensional requirements for the Subject Property was litigated, and Applicant demonstrated its right to relief. Objectors do not claim surprise, confusion or want of full hearing. In the absence of prejudice, the lack of separate application does not require a resolution different than that ultimately reached by the Board.

### III.

Objectors also contend hardship does not exist because the Subject Property may be used for a permitted purpose. More specifically, Objectors assert the Subject Property can be used as an office building.[5] This argument fails.

An office building is not permitted in the C–M zoning district. *See* Section 1314.02 of the Ordinance. The only type of office use permitted in the C–M district is a planned office commercial development. Section 1314.02(b) of the Ordinance. A "planned office commercial development" must be large-scale and integrally designed and planned for a single occupant or as a single primary use facility with numerous tenants. Section 1322.04(g) of the Ordinance. It must also be constructed on a minimum of 10 acres. *Id.* This describes the anticipated "greater Martin Tower use;" however, it does not describe any use that can be made of the Subject Property.[6]

Accordingly, we affirm.

### ORDER

AND NOW, this 14th day of January, 2003, the order of the Court of Common Pleas of Lehigh County is affirmed.

based on a different rationale if the basis for our decision is clear on the record).

5. Objectors state that an office building adjoins the Subject Property. They do not, however, argue here that an office building would have less impact on the community than the proposed use. Moreover, they did not persuade the fact finder an office building would have less impact. To the contrary, the Board found "[a] 20,700 sq. ft. office building at the premises would generate more trips at the intersection of Schoenersville Road and Eighth Avenue than the proposed WAWA." F.F. No. 63.

6. Notably, the Ordinance, in the following districts, does permit business or professional offices: commercial business, general commercial, limited commercial and shopping center.