# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Swede and Sylvia Swede,   :
                  Appellants   :
                               :
          v.             :   No. 787 C.D. 2018
                               :   ARGUED:  March 14, 2019
Richland Township Zoning Hearing   :
Board and Frederick Calabrette   :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED:  April 5, 2019**


        Anthony Swede and Sylvia Swede (the Swedes) appeal from the order of the Court of Common Pleas of Bucks County (trial court), which affirmed the decision of the Zoning Hearing Board (Board) of Richland Township, Bucks County in granting use variances for the property of Frederick Calabrette,[1] which adjoins that of the Swedes. In the absence of a showing of unnecessary hardship, we reverse.

        Calabrette's seventeen-acre property lies on Tohicken Road, Richland Township within the Suburban Residential Conservation Zoning District (SRC Zoning District)[2] of Richland Township.  The Swedes have owned their parcel since

---

    [1] At several places, the record indicates that Calabrette purchased the property jointly with his wife.  Calabrette's wife has not been a party to this action at any stage.

    [2] The Richland Township Zoning Ordinance (Ordinance) provides as follows with respect to the SRC Zoning District:

1971.  Since purchasing his property in 1986, Calabrette has used it as a contracting yard for his business, Calabrette Excavating.  Calabrette's use has been as a G6 Contracting Use,[3] which is recognized by all parties as a lawful preexisting nonconforming use.

In April 2016, Richard Brittingham, the Richland Township Assistant Township Manager and Zoning Officer, received inquiries concerning business activities conducted on Calabrette's property.  After investigation and several letters and meetings, Brittingham issued Calabrette a "Notice of Violation/Enforcement Notice" (Enforcement Notice) in May 2016. (Ex. T-5; Reproduced Record "R.R." at 29-32a.)  Brittingham's Enforcement Notice stated that Calabrette was operating a G7 Truck Terminal Use (renting portions of the property for the storage of truck tractor-trailers [trucks or truck-tractors]) and a G10 Outside Storage Use[4] (renting a

_____

It is the purpose of this district to preserve natural features and resources such as woodlands, steep slopes, wetlands, floodplains and lakes and ponds in areas where such features predominate. Residential uses are permitted on very large lots or where they are clustered with large areas of open space.

Ordinance, § 27-305.3 (relating to statements of purpose and intent for the districts).

[3] A G6 Contracting Use is defined by the Ordinance as follows: "Contractor offices and shops such as building, cement, electrical, heating, painting, masonry, roofing and other similar contracting services."  Ordinance, § 27.405.G (relating to industrial uses).

[4] Those uses are defined by the Ordinance as follows:

G7 Truck Terminal. The use of land and/or structures for the storage of trucks and for the transfer of freight from one truck to another, subject to the following provisions:

(a) Short-term warehousing of less than 30 days may be permitted under this use.

portion of his property for the storage of shrink-wrapped pallets of mulch products for distribution to home improvement stores) without having received appropriate permits from the Township to do so. (*Id.*) Brittingham also found that conducting the two mentioned additional uses besides the lawful nonconforming G6 Contracting Use violated the Ordinance, as only one principal use was permitted on the property. (*Id.*)

Calabrette appealed Brittingham's Enforcement Notice to the Board, also requesting alternative relief in the form of use variances from Section 27-404.G of the Ordinance to allow a G7 Truck Terminal Use and a G10 Outside Storage Use

---

(b) The truck terminal shall be licensed by the Public Utilities Commission.

(c) Trucks with compressors running 24 hours a day shall be located within a quadrangle of buildings or walls.

\* \* \*

G10 Outside Storage. An area not contained within a building, on which materials and objects are stored but not processed, manufactured, remanufactured, or abandoned. Such use is not open to the public, and materials and objects are not available for retail sale. This use shall be subject to the following provisions:

(a) No part of the street right-of-way, no sidewalks or other areas intended or designed for pedestrian use, no required parking areas, and no part of the front yard shall be occupied by outside storage.

(b) Outside storage and display areas shall be shielded from view from all public streets and adjacent lots.

(c) A Class "C" buffer shall be provided along all adjacent uses in accordance with the requirements of §27-516.

Ordinance, § 27-405.G.

in the SRC Zoning District and from Section 27-402.5[5] of the Ordinance to utilize the property for more than one principal use. The Swedes applied for and received party status before the Board. (R.R. at 84a; Notes of Testimony "N.T." 10/20/16, 9.) Two hearings on the matter were held, in October 2016 (R.R. at 77-219a; N.T. 10/20/16, 1-143) and January 2017 (R.R. at 220-56a; N.T. 1/5/17, 1-37). In October 2016, Brittingham and Sylvia Swede (Mrs. Swede) testified, as did Calabrette and William Breiner, the son of the previous owner of Calabrette's property who works occasionally for Calabrette in his excavating business. In January 2017, Brittingham and Calabrette testified.

The Board's findings of fact consist of summaries of the witnesses' testimony and documentary and photographic evidence which was offered and admitted. (Board Decision.) Although the Swedes dispute that the facts are legally adequate to support the Board's conclusions, they have not raised a dispute with the facts as found, which may be summarized as follows.

Brittingham testified to the above procedural history, as well as his site investigation, research into Richland Township records, and communications with Calabrette. Brittingham found no record of a permit having been issued by Richland Township for the G7 Truck Terminal Use and G10 Outside Storage Use and determined that those uses and the use of the property for more than one principal use were not permitted. There is some evidence in the form of notices of violation bearing dates 1988 and 1995 issued by Brittingham's predecessors that non-permitted uses, including the storage of tractor-trailer beds by other companies (1988) and solid waste, truck terminal, and junk yard use (1995), had taken place at least sporadically on the property. (Exs. S1, S2; R.R. at 270-274a.) Brittingham

---

[5] Section 27-402.5 of the Ordinance provides as follows: "On any parcel or tract of land, only one principal use shall be permitted, except where specifically permitted by this Chapter." The Board's opinion mistakenly states that the variance was sought from paragraph 6 of Section 27-402. (Board Decision, 11).

testified that he had no record of prior enforcement action being taken.

Brittingham testified that the property "may have" difficulties being used for the existing nonconforming use, identifying a pond on the property, but also noting that the property was relatively flat. (R.R. at 234a; N.T. 1/3/17 at 15.) Calabrette, called as of cross by the Swedes, did not identify a reason for using the property for a purpose other than the general contracting use (for which he continued to use 14 acres), except that he needed the additional income. (R.R. at 236-238a; N.T. 1/3/17 at 17-19.) Calabrette testified that the property could be used for residential use, which is permitted in the SRC Zoning Area. (R.R. at 239a; N.T. 1/3/17 at 20.).

Mrs. Swede, who lives about "half an acre" away from Calabrette's property, testified that activity on Tohicken Road had increased greatly in the past two or three years (i.e. since approximately 2014), with increased traffic of departing trucks at all hours, and attendant dust and noise. Mrs. Swede described the new level of activity as "unbearable." Mrs. Swede testified that the trucks are parked during the weekends and are gone during the day. Mrs. Swede testified to there being 8 to 13 trucks, approximately 53 feet in length, parked on Calabrette's property. Mrs. Swede testified that she has measured Tohicken Road as being 18 feet wide and that a truck and a car cannot pass safely without one leaving the roadway. Mrs. Swede testified that she no longer feels safe walking with her grandchildren and dog along the roadway. Mrs. Swede testified that the trucks interfere with her ability to peacefully enjoy her property.

Breiner testified that trucks, trailers, equipment, and supplies belonging to several other companies and the Pennsylvania Department of Transportation (PennDOT) had been stored on the property at various times since his father's purchase of it in 1968. Breiner testified that there was a 40 by 100 foot building on the property built in the late 1960s for the maintenance and storage of trucks,

5

equipment, and parts, as well as storage trailers. Breiner testified that some companies and PennDOT rented property from his father for the storage of vehicles, equipment, and supplies, but other companies (steel companies in particular) held equipment and inventory there when they hired his father to perform hauling work.

Since 1986 Calabrette has used the property as a contracting yard for his business, storing vehicles, equipment, and supplies (including dirt and mulch). Calabrette's business used to be much more active, with up to 15 trucks and 15 workers on site at a time, and using all or most of the property for his excavating business in 2003. Calabrette testified that he is now "semiretired," but still a "little active" in the excavating business. Calabrette used to store topsoil and other inventory for his excavating business on the property, but does not do so any longer. Calabrette eliminated a dirt storage pile, had at least a portion of the "parking lot" "stoned," and made a decision to get out of the dirt storage business and lease to the company storing mulch. Calabrette testified that he eliminated the dirt storage to make the property useful "for another income" (i.e. mulch storage).

Calabrette testified that renting space for parking trucks has been going "throughout the whole time" but "maybe at times it was only one or two trucks in here, but mostly now that I have it, probably three four years maybe." (R.R. at 172a; N.T. 10/20/16 at 96.) Calabrette testified that he obtained a permit for truck storage from Richland Township in 1988, after the first violation notice. However, neither Calabrette nor Richland Township has a copy of such a permit. The business for which the alleged truck storage permit was obtained left a year or two later. (R.R. at 187a; N.T. 10/20/16 at 111.) In 2014, Calabrette leased a portion of the property to another company that stores mulch products in the fall and winter, which are then distributed in the following spring to home improvement retailers. Calabrette also currently leases portions of his property for the storage of about eight trucks and equipment to independent truck operators and local law enforcement. Prior to 2014,

6

there is evidence that trailers were stored on the property. The Board specifically found (in its discussion) that such earlier storage was used in Calabrette's business. (Bd. Decision, Discussion, 13.) Calabrette's explanation for leasing portions of the property to others for the storage of mulch products, trucks, and equipment is that he needs the income.

At the end of the first hearing, the Board voted to uphold the Enforcement Notice (with one member voting to find that the G7 Truck Terminal Use was established as a lawful nonconforming use). (R.R. at 217-219a; N.T. 10/20/16 at 141-143.) With regard to the variances, the Board announced an oral decision on January 5, 2017, and issued a written decision on January 31, 2017. In its written decision, the Board sustained the Enforcement Notice, finding it was properly issued, and denied the requested use variance for G10 Outside Storage Use for the mulch products. (Bd. Decision 15, Conclusions of Law "C.L." 1 and 3.) However, the Board found that Calabrette had "sufficiently met the requirements" for two other requested use variances under Chapter 27, Section 1107 of the Ordinance to allow a G7 Truck Terminal Use and to allow more than one principal use of the property. (Bd. Decision, 15, C.L. 2.) With respect to the use variances, the Board's discussion was as follows:

> After consideration of the testimony presented at the hearing and the Exhibits provided, the Board is of the opinion that [Calabrette] has met the conditions necessary with regard to the requested variances . . . to allow for the outside storage of trucks in the SRC Zoning District and the requested variance . . . to allow for more than one principal use on the property. *The Board finds that unique circumstances are present in that a legal nonconforming G6 Contracting Use is currently established at the property.* The surrounding area is primarily residential and agricultural in nature, however, as the aerial photographs depict, *the buildings and lay out of the subject property show that it is particularly suited for the storage of trucks and other heavy equipment as has been done sporadically in the past. As an industrial use is already*

7

*taking place at the property, the variance for a second industrial use as a truck terminal, would be in harmony with the general purpose and intent of the Zoning Ordinance and not create any additional detriment to public safety.* Also, the Board has determined the *Applicant would experience practical difficulty and unnecessary hardship if relief were not granted.* [Emphasis added.]

(Bd. Decision, Discussion, 14.). The Board entered two orders consistent with its conclusions and analysis. (Bd. Decision, Orders, 15-16.)

In February 2017, the Swedes appealed the Board's decision to grant the use variances to the trial court. Calabrette did not appeal the decision with respect to the denial of his appeal of the Enforcement Notice or the denial of the G10 Outside Storage Use variance. Without taking additional evidence, the trial court affirmed the Board in an opinion issued in May 2018. The Swedes' appeal followed.

On appeal,[6] the Swedes take issue with several aspects of the trial court's reasoning, arguing that Calabrette failed to meet his burden to obtain a variance. The Swedes principal argument is that Calabrette did not establish an unnecessary hardship. Within the issue of unnecessary hardship, the Swedes argue that Calabrette has been using the property for his excavating business throughout his ownership and can continue to operate that business; that Calabrette's personal need for income does not constitute an unnecessary hardship; and that there are no

---

[6] Where no additional evidence is taken by the trial court, the Board is the factfinder. This Court may not substitute its interpretation of the evidence for that of the Board, the factfinder in this case. *Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp.,* 25 A.3d 1260 (Pa. Cmwlth. 2011). The Board is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. *Id.; Laurento v. Zoning Hearing Bd. of Borough of West Chester,* 638 A.2d 437 (Pa. Cmwlth. 1994). Thus, it is the Board's function to weigh the evidence before it. *Pohlig Builders, LLC.* If the record contains substantial evidence, this Court is bound by the Board's findings that result from the resolution of credibility and conflicting testimony. *Id.* However, as noted above, the Board's findings are not challenged here, so the scope of our review is limited to determining whether the trial court committed an error or errors of law with respect to the issues raised, questions over which we exercise plenary review.

physical constraints concerning Calabrette's property that prevent him from developing it for uses permitted in a SRC Zoning District. The Swedes also argue that Calabrette did not show that the businesses he introduced to the property were essential business necessities for Calabrette Excavating or bore any relationship to it. Additionally, they contend that the storage of trucks on the property altered the character of the neighborhood in a negative way by introducing noise, vibration, and excessive truck traffic on a quiet residential street. The Swedes note the inconsistency of the Board's finding that Calabrette had not met his burden for a use variance for the G10 Outdoor Storage Use, but still granting him the use variance for the G7 Truck Terminal Use. The Swedes take issue with the Board and the trial court's finding that Calabrette's property has "unique circumstances" in the form of the lawful preexisting nonconforming G6 Contracting Use, arguing that the status of being lawfully nonconforming does not give Calabrette the right to a new, unrelated use of the property. The Swedes argue that renting portions of the property to store trucks was illegal and without permit, as evidenced by violation notices issued by Richland Township's then-zoning officials in 1988 and 1995.

Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC)[7] governs the issuance of variances. An applicant for a variance must establish all of the following elements:

> (1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental

---

[7] Section 910.2 of the MPC, Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

9

to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Taliaferro v. Darby Twp. Zoning Hearing Bd.,* 873 A.2d 807, 811–12 (Pa. Cmwlth. 2005).

The reasons for granting a variance must be substantial, serious, and compelling. *Oxford Corp. v. Zoning Hearing Bd. of Borough of Oxford*, 34 A.3d 286, 296 (Pa. Cmwlth. 2011). The burden of an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances. *Id*. In the context of use variances, unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance. *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 47 (Pa. 1998). An applicant is not required to show that the property is valueless without the variance, but he or she must show more than "mere economic hardship." *Marshall v. City of Philadelphia*, 97 A.3d 323, 330 (Pa. 2014).

A variance will not be granted simply because a zoning ordinance deprives the owner of the most lucrative or profitable uses of the property. *Oxford*, 34 A.3d at 296. It has been held repeatedly that mere economic hardship, even in the form of a loss of income, is insufficient to establish unnecessary hardship. *See, e.g., Rittenhouse Row v. Aspite*, 917 A.2d 880, 885 (Pa. Cmwlth. 2006).

A careful review of the evidence discloses that Calabrette's sole purpose in leasing the property for truck storage has been to obtain additional income. It is undisputed that Calabrette can continue the existing nonconforming use of G6 Contracting Use. Indeed, Calabrette testified that he continues to use 14 of his 17 acres for his excavating business. It is also undisputed that the property can

be used for residential use, permitted in the SRC Zoning District. Thus, the evidence presented and the findings of the Board are not sufficient to support a conclusion that Calabrette suffers from an unnecessary hardship of the sort contemplated by Section 910.2 of the MPC. The trial court suggests that the longstanding use of the property to store vehicles both related and unrelated to Calabrette Excavating constitutes "unique circumstances" justifying a use variance. However, the fact that Calabrette may have leased space for truck storage in violation of the Ordinance does not provide grounds for allowing him to continue to do so, let alone for finding the Ordinance's limitations to constitute an unnecessary hardship. Absent a showing of unnecessary hardship, Section 910.2 of the MPC does not permit a use variance.

Finally, this is not a case where the Board recognized a mere expansion of a lawful existing nonconforming use: the existing nonconforming use in question, G6 Contracting Use, was separate and distinct from both a G7 Truck Terminal Use and a G10 Outside Storage Use, and the Ordinance further prohibited more than one principal use on a specific property.[8]

For the above reasons, we reverse.

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[8] While the Ordinance permits the change of one nonconforming use to another, *see* Ordinance, § 28-809 (relating to changes of nonconforming use), such a change was not requested by Calabrette. Furthermore, such a change is to be among "specific uses identified under each category in the § 27-404, 'Table of Use Regulations'" and must be "permitted only as a special exception," and requires a showing "that a nonconforming use cannot be reasonably changed to a conforming use," and a further showing "that the proposed change will be less objectionable in external effects than the existing nonconforming use, with respect to . . . traffic generation . . . including truck . . . traffic[;] . . . noise, . . . [or] dust. . .[;] [s]torage . . .[;] [and] [a]ppearance." No special exception was sought for a change in nonconforming use and the requisite showings were not made.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Swede and Sylvia Swede, :
       Appellants :
           :
     v.     : No. 787 C.D. 2018
           :
Richland Township Zoning Hearing :
Board and Frederick Calabrette :

# **O R D E R**

AND NOW, this 5th day of April, 2019, the Order of the Court of Common Pleas of Bucks County in the above-captioned matter is REVERSED.

            _____
            **BONNIE BRIGANCE LEADBETTER,**
            Senior Judge