Argeros and Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Transportation, Respondent.

Argued February 4, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Lewis R. Long,* for petitioner.

*Michael Reed,* Assistant Counsel, with him *Kenneth Lee Sable,* Assistant Counsel, *Mark Hodgeman,* Assistant Counsel, *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for respondent.

OPINION BY JUDGE BLATT, July 20, 1982:

Argeros & Company, Inc. (Argeros), a painting contractor, successfully bid on and subsequently entered into a contract with the Pennsylvania Department of Transportation (DOT) to paint five bridges. While painting bridge No. 4, Argeros determined that the weight of the bridge was approximately

260 tons, as opposed to the "approximately 180 tons" listed in the bid proposal and in the contract provided by DOT, and attributed this difference to the weight of the steel deck with which the state had replaced the original wooden deck sometime after it had taken over control of the bridge from the county. Argeros' representative testified that he had notified the Assistant Deputy Engineer of the weight differential and had voiced his position that Argeros had contracted to paint only 180 tons of metal on the bridge. The Assistant Deputy Engineer responded that Argeros had contracted to paint all the metal on the bridge and that it should, therefore, paint all metal surfaces on the bridge, including the deck. Argeros completed the work as so directed and was paid the amount for which it had contracted and submitted a claim to the Board of Claims (Board) for additional compensation in the amount of $6,900.00 for painting the surfaces represented by the additional tonnage. The Board denied the claim and this appeal followed.

Our scope of review here is limited to determining whether or not the Board's order is in accordance with law and whether or not the findings of fact are supported by substantial evidence. *Department of Transportation v. Brayman Construction Company,* 33 Pa. Commonwealth Ct. 485, 382 A.2d 767 (1978).

Parties have the right to make their own contract, and it is not the function of the court to rewrite it or give it a construction in conflict with the plain meaning of the language employed. Consequently, we must interpret contracts as written and the intention of the parties can be ascertained only by examining the entire instrument so that each and every part of the contract is taken into account and given effect. *Department of Transportation v. Acchioni and Caruso, Inc.,* 14 Pa. Commonwealth Ct. 596, 324 A.2d 828 (1974).

Argeros' representative testified that the contract called for painting of all metal surfaces. He further testified that he had looked at the bridge prior to submitting the company's bid but had not calculated its dimensions, choosing instead to rely upon the information contained in the bid. He maintained that the 180 tons set forth therein and in the contract referred to the structural steel surfaces but not to the deck of the bridge. However, the contract described bridge No. 4 as including an "[o]pen type steel beam bridge flooring." Argeros was, therefore, clearly on notice that the work to be done included the steel deck of the bridge, an area easily available for visual inspection and calculations.

Argeros' representative also testified that he had long-standing familiarity with the bridge and was aware that the state had converted the decking from wood to steel. Argeros, therefore, knew—from the bid, from the contract as well as from its own personal knowledge—that all metal surfaces were to be painted and that the bridge contained a metal deck. In the event of uncertainty on Argeros' part as to whether or not the deck was included within the contract requirements, it should have sought clarification from the Department prior to committing itself to the endeavor. *Brayman.* Further, in signing the contract, Argeros warranted that it had had sufficient time to examine the structures, that it was fully aware of and knew the character of the paint, metal and conditions to be encountered and that it had based its bid prices "on his own independent examination and investigation of the structures, paint, metal and conditions and has not relied on any description of the structures furnished to him" by DOT.

It should also be noted that the contract was made under and was subject to Form 408 Specifications.

Section 102.04 of Form 408 cautions the bidder that the estimates of quantities of work to be performed are approximate, that DOT does not assume responsibility for them and that it reserves the right to increase, decrease, or omit them as it may deem necessary. Section 102.05 of Form 408 requires that the bidder carefully examine the proposals prior to submitting a bid, and that submission of a proposal "shall be considered prima facie evidence that the bidder has made such examination and is satisfied as to the conditions . . . and quantities of work to be performed. . . . The Department will make no allowance or concession for failure of the bidder to make the required examination." Argeros, therefore, had agreed to a contract by the terms of which it warranted that it had been put on notice that its bid was to be the product of its own investigation and calculations, rather than of those of DOT which disclaimed liability for additional costs resulting from Argeros' failure to do so. The time between the bid advertisement and the opening was approximately three weeks, and it would have taken Argeros only two days to measure and compute the tonnage of the bridge. Although it was aware of the existence of the steel deck, it did not avail itself of the means by which it could have assured the financial soundness of its bid.

Argeros cannot prevail by characterizing the Deputy Chief Engineer's instruction that it complete the project as an oral modification of the contract whereby it was required to perform extra work. Paragraph 7 of the contract clearly requires that claims for extra work or material will not be allowed unless such work has been ordered *in writing* by the chief engineer. Moreover, the work which Argeros attempts to characterize as additional work is, in fact, work already called for by the contract which, by its terms, includes painting of the steel deck, and it is

well-settled in contract law that "a promise to pay additional compensation for the performance by the promisee of a contract, which the promisee is already under obligation to the promisor to perform, is without consideration." *Department of Transportation v. Mitchell's Structural Steel Painting Co.,* 18 Pa. Commonwealth Ct. 591, 597, 336 A.2d 913, 917 (1975). An instruction to complete work that it was already obliged to perform does not constitute a modification of a contract, nor does it constitute economic duress. Argeros knew the bridge contained a steel deck, that the bid listed the steel deck and that all metal surfaces had to be painted under the contract and, having signed the contract, it is bound by it.

Argeros contends that *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A.2d 139 (1944), in which a contractor was allowed to recover for additional expenditures, controls here. This case presently before us, however, is clearly distinguishable from *Smith,* in which our Supreme Court held that an exculpatory clause similar to the one present here was not binding in a situation where a state agency or commission has *knowingly and substantially misrepresented* information in the bid, thereby creating a constructive fraud upon the contractor. Nothing in the record here, however, suggests that DOT was aware at the time of a possible discrepancy between the actual weight of the bridge and the approximate tonnage of the bridge as stated in the bid. The testimony before the Board was inconclusive and left unresolved the question of whether or not the 180 tons included the steel deck. Argeros has, therefore, failed to show the fraud or deception necessary to support a finding of constructive fraud.

We are, therefore, bound to enforce the contract to which the parties agreed and we will, therefore, affirm the Board.

ORDER

AND Now, this 20th day of July, 1982, the order of the Board of Claims in the above-captioned matter is affirmed.

Judge MENCER did not participate in the decision in this case.