Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Burrell Construction & Supply Company, Inc., Respondent.

Argued September 13, 1984, before Judges DOYLE, PALLADINO and BARBIERI, sitting as a panel of three.

*Michael D. Reed,* Assistant Counsel, with him, *Spencer A. Manthorpe,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for petitioner.

*Frank M. Van Ameringen,* for respondent.

OPINION BY JUDGE DOYLE, November 5, 1984:

This is an appeal by the Pennsylvania Department of Transportation (DOT) from a decision and order of the Board of Claims (Board) awarding Burrell Construction & Supply Company, Inc. (Burrell) ''$9,-117.40, together with interest at the rate of six (6%) percent per annum from April 15, 1980.''

Burrell was awarded a contract for the resurfacing of Legislative Route 02260, Spur 2, in Allegheny County, commonly known as the 62nd Street Bridge. The contract, which incorporated by reference standard form specifications, supplements, and special provisions, required the removal of an existing bituminous surface from the roadway. The surface was then to be repaved with (1) a ''scratch'' course or leveling surface, (2) a binder course of one and a half inches minimum depth and (3) a wearing course of one and a half inches minimum depth.[1]

---

[1] Scratch course material was priced at $38.00 a ton. There is no provision for a tonnage price for measure of the binder and wearing course materials in the contract. Quantities of binder and wearing course materials were bid on a *square yardage* basis calculated by a two dimensional surface measurement.

When the existing bituminous surface of the bridge was stripped away, the bridge deck was found to be seriously deteriorated; consequently, additional patching work was ordered by DOT and completed by Burrell at a cost of approximately $117,000.00. Because of this repair work DOT determined that less scratch course would be needed than was originally anticipated and so advised Burrell. Burrell verbally objected to this determination, believing the material to be necessary to ensure a level surface. Subsequently, Burrell, without obtaining a work order, written or otherwise, laid down an extra 272 tons of binder and wearing course material which in many areas that were sampled exceeded the one and a half inch minimum requirement for each. DOT advised Burrell of the excess thickness of the binder and wearing course materials, but made no further mention of this matter to Burrell. Recoupment for the cost of this 272 tons of materials is what is in dispute, a sum of $9,117.40.

Petitioner alleges that Burrell is not entitled to payment because the materials were not required by the contract, and were placed on the bridge without approval and without a written work order. In other words, DOT is insisting upon strict compliance with the terms of the contract.

Our scope of review is limited to determining whether an error of law was committed or whether the findings of fact are supported by substantial evidence. *Department of Transportation v. Brayman Construction Co.*, 33 Pa. Commonwealth Ct. 485, 382 A.2d 767 (1978).

This Court has previously recognized that "[p]arties have the right to make their own contract, and it is not the function of the court to rewrite it or give it a construction in conflict with the plain meaning of the language employed." *Argeros and Company, Inc.*

*v. Department of Transportation,* 67 Pa. Common-
wealth Ct. 531, 533, 447 A.2d 1065, 1067 (1982). We,
thus, must examine the relevant sections of the con-
tract between DOT and Burrell in order to determine
the resolution of this matter.

The contract provisions for the scratch course item
state:

> This work shall consist of placing a bituminous
> scratch course in the depressions and wheel
> ruts in the existing concrete bridge deck *as spe-
> cified and as directed by the engineer.* (Em-
> phasis added.)

In addition, the contract specifications state at Section
102.04:

> INTERPRETATION OF APPROXIMATE
> ESTIMATE OF QUANTITIES—The bidders'
> attention is directed to the fact that the esti-
> mate of quantities of work to be done and/or
> materials to be furnished under these specifi-
> cations, as shown on the proposal form, and in
> the contract, is approximate and is given only
> as a basis of calculation upon which the award
> of the contract is to be made. The Department
> does not assume any responsibility that the
> quantities shall materialize strictly in the con-
> struction of the project, nor shall the contractor
> plead misunderstanding or deception because
> of such estimate of quantities or of the char-
> acter of the work, location, or other conditions
> pertaining thereto. The Department reserves
> the right to increase or decrease any or all of
> the above mentioned quantities of work, or to
> omit any of them, as it may deem necessary,
> and such increase or decrease of the quantities
> given for any of the items shall not be con-

sidered as sufficient grounds for granting an increase in the unit prices bid, except as set forth in Section 104.02.

Taken together, these two provisions indicate that DOT has reserved to itself discretion to determine the amount of scratch course to be utilized and further indicate that quantities specified in the contract are approximations only and not to be relied upon by the contractor. While Burrell may have disagreed with DOT's decision to reduce the amount of scratch course it had initially determined to use, DOT clearly acted within its rights pursuant to the contract in doing just that. Any reliance by Burrell upon a specific amount of scratch course was at its own risk. Moreover, because the amount of scratch course was discretionary with DOT, Burrell's claim that the 272 tons of binder and wearing course material was actually "substituted material" for the scratch course and therefore called for within the contract, is without merit. Burrell cannot usurp DOT's discretion by substituting, without DOT's authorization, a different material for the scratch course. Similarly, Burrell's position that the contract called for 730 tons of scratch course is also erroneous. Although this amount is designated in the contract, Section 102.04 of the contract clearly indicates that DOT reserved the right to alter this quantity and, in addition, warns the bidder not to rely on a stated quantity of materials.

We note that the above cited Sections of the contract do not specifically preclude recovery for the additional wearing and binder course materials. But, contract specification 401.3(m) provides "[t]he Department will not be liable for payment for any excess in depth of binder and wearing courses." In addition, the contract also states in paragraph six:

It is distinctly understood and agreed that no claim for extra work or materials, not specifically herein provided, done or furnished by the contractor, will be allowed by the Secretary of Transportation, nor shall the contractor do any work or furnish any materials not covered by the specifications and the contract, unless such work is ordered in writing by the chief highway engineer. In no event shall the contractor incur any liability by reason of any verbal directions or instructions that he may be given by the said chief highway engineer, or his authorized assistant, nor will the said party of the first part be liable for any materials furnished or used or for any work or labor done, unless said materials, work or labor are required of said contractor on written order furnished by the said chief highway engineer. Any such work or materials which may be done or furnished by the contractor without such written order first being given shall be at the said contractor's risk, cost, and expense and he hereby covenants and agrees that without such written order he shall make no claim for compensation for the work or materials so done or furnished.

This exculpatory language provides that no claim for extra materials will be recognized unless such materials are ordered *in writing* by the chief highway engineer. Burrell did not obtain a work order, written or otherwise, for the additional materials.

In discussing virtually the identical exculpatory provision in *Security Painting Co. v. Department of Transportation*, 24 Pa. Commonwealth Ct. 507, 357 A.2d 251 (1976), this Court stated that any misrepresentations by DOT officials on the jobsite would *not* form the basis for Security Painting to recover be-

cause Security Painting had failed to obtain a written work order. Similarly, in *Argeros, supra,* this Court refused to find an oral modification of a contract which contract contained a specific provision requiring a written work order. We have recognized that the policy behind requiring such orders is to prevent fraudulent and exorbitant claims. *Dick Corporation v. State Public School Building Authority,* 27 Pa. Commonwealth Ct. 498, 500, 365 A.2d 663, 665 (1976). Moreover, the Pennsylvania Supreme Court recently reiterated its position that "[w]here a public contract states the procedure in regard to work change and extras, claims for extras will not be allowed unless these provisions have been strictly followed." *Nether Providence Township School Authority v. Thomas M. Durkin & Sons, Inc.,* Pa. , , 476 A.2d 904, 906-07 (1984). The contract provision here, as in *Security Painting* and *Argeros, required* a written work order. Burrell obtained no such order. Thus, by the terms of the contract, Burrell is entitled to no compensation and the Board erred as a matter of law.[2]

Having determined that the Board committed an error of law, we need not consider DOT's other contentions that Burrell did not give proper notice of its claim pursuant to the contract and that the findings of the Board were unsupported by the evidence. Reversed.

ORDER

Now, November 5, 1984, the decision and order of the Board of Claims in the above captioned matter, dated September 3, 1983, is hereby reversed.

---

[2] Burrell maintains that it should be afforded relief because its actions *prevented* DOT from incurring damages. In light of the holding in *Nether Providence,* however, we believe that Burrell's failure to obtain a written work order precludes any consideration of mitigation of damages by Burrell.