GUY M. COOPER, INC., Appellant

v.

EAST PENN SCHOOL DISTRICT

v.

Bilt–Rite Contractors, Inc., United States Fidelity & Guaranty Company, and The Architectural Studio and O'Brien–Kreitzberg & Associates, Inc.

Guy M. Cooper, Inc.

v.

East Penn School District

v.

Bilt–Rite Contractors, Inc., United States Fidelity & Guaranty Company, and The Architectural Studio and O'Brien–Kreitzberg & Associates, Inc.

Appeal of: East Penn School District.

Commonwealth Court of Pennsylvania.

Argued June 9, 2006.

Decided July 26, 2006.

Richard W. Hunt, Marlton, NJ, for appellant, Guy M. Cooper, Inc.

Domenic P. Sbrocchi, Bethlehem, for appellee, East Penn School District.

Patrick R. Kingsley, Philadelphia, for appellee, United States Fidelity & Guaranty Company.

Maura Zajac McGuire, Easton, for appellee, The Architectural Studio.

Jeffrey P. Wallack, Blue Bell, for appellee, Bilt–Rite Contractors, Inc.

BEFORE: COHN JUBELIRER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In the first of two consolidated appeals arising out of construction of the East Penn Middle School (Project), Guy M. Cooper, Inc. (Mechanical Contractor) contends the Court of Common Pleas of Lehigh County (trial court) erred by granting summary judgment in favor of East Penn School District (School District) on Mechanical Contractor's breach of contract and unjust enrichment claims. In the second appeal, a protective appeal, School District contends the trial court erred by granting judgments in favor of Bilt–Rite Contractors, Inc. (General Contractor), United States Fidelity & Guaranty Company (Surety) and The Architectural Studio (Architect) on School District's claims over against General Contractor, Surety and Architect. Discerning no error, we affirm.

## I.

### A. Factual History

Prior to June 1997, School District solicited bids for construction of a new middle school. Relevant to these appeals, School District awarded General Contractor the overall construction contract and Mechanical Contractor the heating, ventilation and air-conditioning contract (HVAC). School District hired Architect to design the Project, and O'Brien–Kreitzberg & Associates, Inc., as its Project Manager. Surety issued a performance bond for General Contractor naming School District as Obligee.[1]

The Contract Documents between School District and its prime contractors, including General and Mechanical Contractors, include: Standard Form of Agreement between Owner and Contractor (Standard Form); General Conditions of the Contract for Construction (General Conditions); Supplementary Conditions of the Contract for Construction (Supplementary Conditions); Project Manual and other state-required documents. Of particular import here, Supplementary Condition 15.8.1 of the Contract Documents provides:

[School District] shall not be liable to contractor or any subcontractor for claims or damages of a monetary or any other nature caused by or arising out of delays contemplated or not contemplated at the signing of the contract. The sole remedy against [School District] for delays shall be the allowance to claimant of additional time for completion of work.

Reproduced Record (R.R.) at 73a.

The various construction contracts required completion of the Project within 460 days of issuance of the notices to proceed. On June 6, 1997, School District issued notices to proceed to all contractors. Therefore, the Project was to be completed by September 9, 1998.

As construction progressed, delays became apparent. In November 1998, two months after the original Project completion date, School District terminated General Contractor for a six-week period.[2] General Contractor ultimately returned to the Project, and School District and General Contractor set a new substantial completion date in August 1999. Delays continued, and the Project was substantially completed on January 27, 2000, 505 days beyond the original completion date.

---

1. See Public Works Contractors' Bond Law of 1967, Act of December 20, 1067, P.L. 869, as amended, 8 P.S. §§ 193–202.

2. On September 4, 1998, two days prior to the original completion date, Mechanical Contractor submitted a letter of substantial compliance to Architect. R.R. at 371a.

## B. Procedural History

In September 2002, Mechanical Contractor filed its original complaint against School District. School District filed preliminary objections. Mechanical Contractor filed a second amended complaint, after which School District joined General Contractor, Architect, and Surety as Additional Defendants. Architect then joined Project Manager.

In its third amended complaint, Mechanical Contractor sets forth two counts. In Count I it alleges School District breached its contract with Mechanical Contractor by, in essence, failing to ensure construction proceeded without delay or interruption.[3] In Count II it alleges School District retained the benefit of Mechanical Contractor's additional labor and materials resulting from the delays without compensating Mechanical Contractor for its added expenses.

In its complaint joining additional defendants, School District alleges Mechanical Contractor's harm, if any, resulted from General Contractor's and Architect's breach of contract or negligence. The joinder complaint further alleges that Surety is liable for General Contractor's delays by virtue of the performance bond.[4]

Discovery ensued. Afterwards, all parties except Mechanical Contractor filed motions seeking judgment, either on the pleadings or as summary judgment. On November 7, 2005, the trial court entered five orders granting the judgment motions. As a result, Mechanical Contractor was out of court.

Mechanical Contractor now appeals the trial court's order granting summary judgment in favor of School District. In its protective appeal, School District challenges the trial court's orders granting General Contractor's, Architect's and Surety's judgment motions.[5]

On appeal, in reviewing the trial court's grant of summary judgment, we are limited to determining whether the trial court committed an error of law or abused its

---

**3.** The gravamen of Mechanical Contractor's claim is found in ¶ 28(a-k) of the third amended complaint. It alleges the School District failed to: (a) provide complete drawings free from error and ambiguity; (b) timely respond to requests for information; (c) require General Contractor to coordinate its work with other prime contractors; (d) require General Contractor to prepare and organize the construction schedule in conjunction with other contractors; (e) resolve delays and disruptions in construction; (f) require General Contractor to cease and avoid delays, interferences and disruptions; (g) timely issue consolidated revised drawings; (h) make work areas available; (i) issue extensions of time and revised schedules as requested; (j) negotiate with Mechanical Contractor regarding schedule changes; and, (k) properly administer its contract with General Contractor to ensure timely completion of the Project. R.R. at 21a–22a.

**4.** Architect thereafter joined Project Manager, alleging if Mechanical Contractor sustained damages due to construction delays, Project Manager's breach of contract with School District caused Mechanical Contractor's damages. Project Manager is not participating in this appeal.

**5.** In January 2006, the prevailing parties filed a motion to quash Mechanical Contractor's appeal alleging this Court lacked jurisdiction because Mechanical Contractor attached the wrong November 7, 2005 trial court order to its notice of appeal. We denied the motion and allowed Mechanical Contractor an opportunity to correct its error, basing our conclusion on the liberal construction afforded the Rules of Appellate Procedure and their requirement that the notice of appeal only contain the date of the order on review. *See* Pa. R.A.P. 105(a); 904(a). *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 894 A.2d 179 (Pa.Cmwlth. 2006) (single judge opinion by Simpson, J.).

School District briefly raises the issue of jurisdiction again. On review, we discern no error. We adopt the prior opinion as our statement of reasons.

discretion. *Salerno v. LaBarr*, 159 Pa. Cmwlth. 99, 632 A.2d 1002 (1993). Summary judgment is appropriate only when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*[6]

## II.

### Appeal at 2430 C.D.2005

In Mechanical Contractor's appeal of the trial court's order granting summary judgment in favor of School District, it contends the trial court erred because: it offered sufficient evidence School District failed to act on an essential matter necessary for the prosecution of its work and, therefore, the contract's "no damages for delay" clause should be set aside; its claim for damages was timely; and, it offered sufficient evidence to establish Mechanical Contractor provided additional labor and materials benefiting School District for which it was not compensated. For the following reasons, we disagree.

### A. No Damages for Delay Clause

In its first argument, Mechanical Contractor contends the trial court erred by granting summary judgment where it provided sufficient evidence to prove School District failed to act on an essential matter necessary to the prosecution of its work and, therefore, the "no damages for delay" clause should be set aside.

 At the outset, we note a contract must be construed according to the meaning of its language. *Empire Sanitary*

*Landfill, Inc. v. Riverside Sch. Dist.*, 739 A.2d 651 (Pa.Cmwlth.1999). Where the terms of a contract are clear and unambiguous, courts are required to give effect to that language. *TIG Specialty Ins. Co. v. Koken*, 855 A.2d 900 (Pa.Cmwlth.2004), *aff'd*, 586 Pa. 84, 890 A.2d 1045 (2005). Where parties mutually agree to a term at the time of contracting, the term will be generally enforced. *Lapio v. Robbins*, 729 A.2d 1229 (Pa.Super.1999).

As previously stated, the "no damages for delay" clause provides School District is not liable to Mechanical Contractor for monetary claims arising out of delays. Rather, the contract provides a different remedy for construction delays: additional time to complete the work.

 Generally, "no damages for delay" clauses are enforceable. However, Pennsylvania law recognizes exculpatory provisions in a contract cannot be raised as a defense where (1) there is an affirmative or positive interference by the owner with the contractor's work, or (2) there is a failure on the part of the owner to act on some essential matter necessary to the prosecution of the work. *Henry Shenk Co. v. Erie County*, 319 Pa. 100, 178 A. 662 (1935). Thus, affirmative or positive interference sufficient to overcome the "no damages for delay clause" may involve availability, access or design problems that pre-existed the bidding process and were known by the owner but not by the contractor. *Coatesville Contractors & Eng'rs, Inc. v. Borough of Ridley Park*, 509 Pa. 553, 506 A.2d 862 (1986) (pre-existing access problem caused by undrained lake

---

**6.** As to motions of some of the additional defendants, this Court may sustain the trial court's grants of judgment on the pleadings only where the moving parties' right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise. *Hartman v. City of Allentown*, 880 A.2d 737 (Pa.Cmwlth.2005). Our scope of review is whether the trial court committed an error of law or abused its discretion. *Id.* We may consider only the pleadings, admissions and any documents properly attached to the pleadings presented by the party against whom the motion is filed. *Id.*

known by owner but unknown by contractor); *Commonwealth of Pa., Dep't of Highways v. S.J. Groves & Sons Co.,* 20 Pa.Cmwlth. 526, 343 A.2d 72 (1975) (that contractor would not have access to portion of construction site for 14–week period while utility removed and replaced cable conduits was known by owner but unknown by contractor). Similarly, an owner cannot insulate itself from a delay damage claim where it fails to perform an essential contractual duty. *Gasparini Excavating Co. v. Pa. Tpk. Comm'n,* 409 Pa. 465, 187 A.2d 157 (1963) (owner with contract responsibility for contractor cooperation pursuant to "predetermined program" directed contractor to proceed, but contractor prevented from accessing work area for five months because of another contractor); *Commonwealth of Pa., State Highway & Bridge Auth. (Penn–DOT) v. Gen. Asphalt Paving Co.,* 46 Pa.Cmwlth.114, 405 A.2d 1138 (1979) (owner assumed responsibility for negotiating relocation of water line, but failed to do so expeditiously, resulting in denial of access while water line relocated by others).

Here, Mechanical Contractor alleges School District breached its contract by failing to act on an essential matter necessary to the prosecution of the work. Specifically, Mechanical Contractor avers School District failed to prevent delays by overseeing and controlling General Contractor's work (Third Amended Compl. ¶ 28(c), (d), (e), (f), (h), (j) and (k)), and by defects in Architect's work (Third Amended Compl. ¶ 28(a), (b), (g), and (i)).

## 1. General Contractor

The trial court relied on *Shenk* to conclude School District bears no responsibility for delays attributable to General Contractor. We conclude School District is entitled to summary judgment on Mechanical Contractor's claims that School District failed to prevent delays by overseeing and controlling General Contractor's work.

### a.

A discussion of *Shenk* is helpful. Erie County hired Shenk to enlarge the County's court house. Shenk completed construction of the new wing a year beyond the original completion date because the County delayed in awarding other new contracts. Shenk later instituted an action to recover delay damages.

The parties' contract provided delays by owner, architect or other contractors would extend the time for completion. The contract further provided if either party suffered damages as a result of the wrongful or negligent conduct of the other, the injured party would be reimbursed.

In reversing an award of damages, the Supreme Court stated the rule relative to delays in the prosecution of work by an owner, architect or other contractors:

> The rule relative to delays in the prosecution of work by an act or neglect of the owner, architect, or other contractors, or changes in the work and damages for wrongful acts or neglect has been thus stated. *In construction work, an owner does not generally guarantee or indemnify against loss occasioned by the delays of independent contractors connected with the work which may be reasonably anticipated.* The owner fulfills his duty when he selects as contractor a person generally known as responsible. *Where contracts contain a provision* against delay of other contractors or other incidents of the work, *which provide in substance as this one does for no liability on the part of the owner for delays of contractors or changes in work, such provision includes delays of other contractors in connection with the work, or delays which are covered by the contract or*

*reasonably anticipated from the circumstances attending the project. But such provisions have no reference to an affirmative or positive interference on the part of the owner or his representative apart from the contract, or ordinarily to a failure to act in some essential matter necessary to the prosecution of the work unless delay in performance is contemplated by the contract;* these interferences or failures may cause damages in other ways than that contemplated by the provision against delays.

*Id.* at 104, 178 A. at 664 (emphasis added; citations omitted). Thus, we learn from *Shenk* that an owner bears no responsibility for independent contractor delays absent affirmative or positive interference by the owner or its representative apart from the contract or failure to act on an essential matter necessary to complete work.

### b.

■ Applying *Shenk* here, School District is not responsible for General Contractor's construction delays. General Contractor is an independent contractor. Reasonably anticipated delays by such contractors are covered by the "no damages for delay" clause.

Further, contract language supports this conclusion. Allegations against School District, appearing in ¶ 28(c), (d), (e), (f), (h), (j), and (k), of the third amended complaint pertain to actions for which General Contractor was responsible under its contract with School District. Thus, Article 3 of the General Conditions sets forth a contractor's responsibilities. Subsection 3.3 directs that *the contractor is solely responsible for* and controls construction means,

methods, techniques, *sequences and procedures for coordinating all portions of work under the contract.* R.R. at 53a (emphasis added). The General Conditions reserve to School District, as owner, the right to stop work or carry out work only in the event the contractor defaults. R.R. at 52a.

Additionally, Subsections 1.2 and 1.3 of Section 01010 of the Project Manual address coordination of work and the construction schedule. Supplemental Reproduced Record (S.R.R.) at 158b. Specifically, Subsection 1.2A provides that *General Contractor bears the responsibility for coordinating work among each prime contractor. Id.* (emphasis added). Subsection 1.2B places *General Contractor* in charge of the Project site from beginning of work until School District accepts the Project. *Id.* (emphasis added). Subsection 1.3B requires *General Contractor* to prepare and maintain the construction schedule to help Architect appraise the reasonableness of the schedule and evaluate progress. *Id.* (emphasis added).

Thus, the General Conditions and Project Manual give General Contractor the burden of construction scheduling and coordination. School District bears no contractual responsibility to oversee the construction schedule. Also, scheduling questions and coordination issues were anticipated and covered by the contract.

### c.

Furthermore, we reject Mechanical Contractor's claim that under Article 6 of the General Conditions, titled "Construction by Owner or by Separate Contractors," School District bears contractual responsibility for contractor coordination.[7] The

---

7. The General Conditions provide, in relevant part:

 **6.1.1** [School District] reserves the right to perform construction or operations related

to the Project with [its] own forces, and to award separate contracts in connection with other portions of the Project or other construction or operations on the site....

plain language of this provision, set forth in the accompanying note, applies only where the School District has its own work force in the field. In such a circumstance, School District must coordinate the work of its own forces with those of other contractors. As there is neither pleading nor proof that School District had its own employees constructing the Project, this unambiguous provision is inapplicable.

■■■■■ We reach the same conclusion, moreover, by resort to principles of construction. When reviewing a contract, we must review and consider the entire instrument giving effect to all its provisions and construing it according to the plain meaning of its language. *Adams v. Pub. Util. Comm'n,* 819 A.2d 631 (Pa.Cmwlth. 2003). "One part of a contract cannot be so interpreted as to annul another part[;] rather[,] writings which comprise an agreement must be interpreted as a whole." *Charles D. Stein Revocable Trust v. Gen. Felt Indus., Inc.,* 749 A.2d 978, 980 (Pa.Super.2000) (citation omitted).

■■■■ If we accept Mechanical Contractor's position that School District is required under Article 6 to coordinate work among its contractors, Article 3 of the General Conditions would be superfluous. In other words, School District's coordination and schedule responsibilities pursuant to Article 6 would duplicate the same responsibilities assigned solely to General Contractor in Article 3 and the Project Manual. We presume the parties intended all provisions to have meaning, and a construction that achieves such an outcome is

preferred. *See Argeros & Co., Inc. v. Commonwealth of Pa., Dep't. of Transp.,* 67 Pa.Cmwlth. 531, 447 A.2d 1065 (1982) (court must interpret contracts as written and the intention of the parties can be ascertained only by examining the entire instrument so that each and every part of the contract is taken into account and given effect).

Reading the General Conditions and the Project Manual together, the most logical and reasonable interpretation of Article 6 of the General Conditions renders it applicable only in those instances where School District employs its own forces to perform construction. In that event only, the owner is responsible for coordinating work between itself and other contractors.

**d.**

In sum, both *Shenk* and the Contract Documents establish School District is not liable for General Contractor's construction delays as outlined in Mechanical Contractor's third amended complaint, ¶ 28(c), (d), (e), (f), (h), (j), and (k). Accordingly, we conclude the trial court properly entered summary judgment in favor of School District on those delay claims founded on a failure to correct or control General Contractor's coordination lapses.

**2. Architect**

■■■■ Similarly, the trial court relied on *Shenk* to conclude School District was not liable to Mechanical Contractor for actions by Architect that caused delays. The previously quoted language from *Shenk*

---

**6.1.3.** [School District] shall provide for coordination of the activities of [its] own forces and of each separate contractor with the Work of the Contractor, who shall cooperate with them. The Contractor shall participate with other separate contractors and [School District] in reviewing their construction schedules when directed to do so.

The Contractor shall make any revisions to the construction schedule and Contract and Sum deemed necessary after a joint review and mutual agreement. The construction schedules shall then constitute the schedules to be used by the Contractor, separate contractors and [School District] until subsequently revised. R.R. 59a.

placed architects in the same category as other independent contractors when applying general construction law. The Court in *Shenk* also stated, however, that the "no damages for delay" provisions "have no reference to an affirmative or positive interference on the part of the owner *or his representative* apart from the contract...." 319 Pa. at 104, 178 A. at 664 (emphasis added). Therefore, if pleading and proof establishes a party is acting as the owner's representative, the owner is not shielded from a claim for damages for delay arising from activities of that party.

Here, the General Conditions, as well as the Standard Form, identify Architect as School District's representative. *See* R.R. at 55a; S.R.R. at 255b. Accordingly, if Mechanical Contractor offers to prove the construction delays were due to matters assigned to Architect as School District's representative, School District may be liable to Mechanical Contractor despite the contract language.

In its third amended complaint, Mechanical Contractor alleges construction delays were due in part to School District's failure to provide drawings free from error, to timely respond to requests for information, to timely issue consolidated revised drawings, and to issue extensions of time for completion of work. R.R. at 21a–22a. Architect's obligation to perform these tasks arises under the Contract Documents. *See* R.R. 55a–56a, 60a; S.R.R. 254b–56b. *See also Bloomsburg Mills, Inc. v. Sordoni Constr. Co.*, 401 Pa. 358, 164 A.2d 201 (1960) and *Robert Wooler Co. v. Fidelity Bank*, 330 Pa.Super. 523, 479 A.2d 1027, 1031 (1984) (client has a right to expect architect to use "reasonable and ordinary care and diligence in the application of his professional knowledge to accomplish the purpose for which he is retained").

■ Expert testimony is required where the subject of inquiry is one involv-

ing special skills or training not common to the ordinary person. *Cipriani v. Sun Pipe Line Co.*, 393 Pa.Super. 471, 574 A.2d 706 (1990). "[I]n a suit against an architect for negligent design ... expert testimony is necessary to establish professional negligence." *Id.* at 715. In particular, expert testimony is required to prove the standard of care, and it is usually required to prove the failure to meet the standard of care and causation. *Tennis v. Fedorwicz*, 140 Pa.Cmwlth. 7, 592 A.2d 116 (1991); *Storm v. Golden*, 371 Pa.Super. 368, 538 A.2d 61 (1988). *See generally* STEPHEN M. FELDMAN, PENNSYLVANIA TRIAL GUIDE, PROFESSIONAL MALPRACTICE § 15.8 (3d rev. ed.1999).

■ Here, however, Mechanical Contractor failed to present sufficient evidence of Architect's failure to perform under its contract with School District. First, as to expert evidence necessary to establish a professional standard of care and a breach of that standard, Mechanical Contractor retained a schedule review consultant as its expert. Mechanical Contractor relied on the expert's report to support the delay allegations. However, the expert's report is merely a timeline of the Project's progress and a calculation of alleged damages as a result of the construction delays. S.R.R. 543b–92b. The expert's report does not describe an architectural standard of care. Further, the expert's report does not describe a breach of an architectural standard of care and does not identify drawings alleged to be defective or ambiguous.

Second, as to lay testimony, Mechanical Contractor's witnesses testified they reviewed the HVAC plans and specifications prior to bidding on the contract and found no design errors. R.R. at 161a; 163a. Although these witnesses claimed errors and omissions from the Project drawings were obvious "from nearly the beginning,"

the witnesses did not identify any specific drawings containing errors. R.R. at 161a; 169a; 242a. Mechanical Contractor's witnesses only identified unspecified curtain wall and steel issues as design errors. R.R. at 159a; 162a. This testimony is not sufficient to establish professional fault with the drawings: it is not competent to prove a professional standard of care and breach; and, it is too vague to permit either School District or Architect to prepare a defense.

Third, Mechanical Contractor claims Architect failed to timely respond to requests for information and issue reasonable extensions of time to complete work. It relies on a request for information summary sheet that shows the dates of the requests and Architect's responses. R.R. at 1029a. Additionally, Mechanical Contractor cites another prime contractor's request for an extension of time, which Architect denied, to show extensions were not granted. R.R. at 1119a.

As previously discussed, however, the expert's report establishes neither an architectural standard of care nor a breach of that standard. Thus, the expert does not offer proof of professionally unreasonable conduct. Also, Mechanical Contractor does not offer proof that Architect failed to act within finite contractual time periods. Additionally, our record search fails to reveal where Mechanical Contractor sought extensions of time to complete its work from Architect.[8] R.R. at 318a; 498a. Thus, Mechanical Contractor failed to offer

sufficient evidence to support these contentions.

Fourth, we disagree with Mechanical Contractor that documentation generated during construction supports allegations that Architect failed to perform an essential matter necessary to the prosecution of the work. For the most part, the documents attribute delays to General Contractor or to unspecified reasons. *See* R.R. at 1015a; 1116a; 1119a. To the extent the documents purport to show design errors, they reference general design problems in the auditorium ceiling, R.R. at 1009a, 1011a–13a, and in the curtain wall. R.R. at 162a, 1021a, 1023–24a. These documents do not establish a breach of Architect's specific contractual duties. Also, the documents do not prove an architectural standard of care or a breach of that standard.

 Summarizing, Mechanical Contractor's expert report, lay witness testimony, and documentation report fail to indicate how Architect failed to perform under its contract or how its conduct fell short of architectural standards. Consequently, Mechanical Contractor failed to offer sufficient proof to create a material issue of fact precluding summary judgment. Although the trial court erred in concluding *Shenk* barred Mechanical Contractor's claims against School District for Architect's actions as its representative, summary judgment was appropriate in view of Mechanical Contractor's lack of evidentiary support.[9]

8. As part of Mechanical Contractor's breach of contract claim, it alleges School District failed to act with good faith and fair dealing with Mechanical Contractor in regard to extensions of time and revising work schedules. R.R. at 22a–24a. However, as previously noted, General Contractor retained responsibility for the work schedule. Moreover, the record shows Mechanical Contractor knew of revised schedules and denied School District's/Archi-

tect's offer for additional time to complete work delayed by a change order. R.R. at 229a–309a; 321a–23a; 372a–78a; 499a.

9. We may affirm a trial court's order based on a different rationale if the basis for our decision is clear on the record. *N. Bethlehem Neighbors Group v. City of Bethlehem Zoning Hearing Bd.*, 822 A.2d 840 (Pa.Cmwlth.2003).

## B. Timely Claim

In its second argument, Mechanical Contractor contends the trial court erred by determining its claim for damages was untimely. Because we conclude School District is not liable to Mechanical Contractor for General Contractor's or Architect's delays, the issue of whether Mechanical Contractor timely filed its damages claim with School District is moot. *See Johnson v. Pa. Bd. of Probation & Parole,* 890 A.2d 45 (Pa.Cmwlth.2006).

## C. Unjust Enrichment

In its final argument, Mechanical Contractor contends the trial court erred by concluding its unjust enrichment claim fails. In Count II of the third amended complaint, Mechanical Contractor alleges that due to construction delays, it provided additional labor and materials which benefited School District and for which it was not compensated.

 Unjust enrichment is an equitable doctrine implying that a contract exists when a party is found to have unfairly benefited by another's actions. *Commonwealth ex rel. Pappert v. TAP Pharm. Prods, Inc.,* 885 A.2d 1127 (Pa.Cmwlth. 2005). However, unjust enrichment is inapplicable where the parties' relationship is founded upon a written agreement, regardless of how "harsh the provisions of such contracts may seem in light of the subsequent happenings." *Wilson Area Sch. Dist. v. Skepton,* 586 Pa. 513, 520, 895 A.2d 1250, 1254 (2006).

Mechanical Contractor does not dispute the general principle, but argues an exception exists where one party performs services wholly outside the scope of the contract. *See Drysdale v. Woerth,* 153 F.Supp.2d 678 (E.D.Pa.2001), *aff'd,* 53 Fed. Appx. 226 (3d Cir.2002) (tenant compensated for substantial renovations to leasehold that were not part of lease agreement).

 Mechanical Contractor's witness testified its claim for additional material and labor was premised on the contract's 460–day work schedule. R.R. at 152a. Mechanical Contractor seeks to recover additional costs based solely on the additional time needed to complete the Project; it does not contend or demonstrate it supplied extra materials not included in its Project bid. *Id.*

We agree with the trial court Mechanical Contractor provided nothing more than the contract requirements and thus did not furnish services wholly outside the contract terms. School District contracted with Mechanical Contractor for the Project's HVAC system, which was exactly the work performed. Mechanical Contractor's claims for home and on-site office expenses, tools, and labor expenses were all incident to the contract and were required whether the Project finished on time, early or late. As in all construction contracts, Mechanical Contractor assumed the risk that Project delays would affect its profit margin. As a result, School District paid Mechanical Contractor that which it was entitled to receive under the contract. *Wilson.*

Accordingly, the trial court's order granting summary judgment in favor of School District on Mechanical Contractor's claim for unjust enrichment was proper.

## III.

### Appeal at 2448 C.D.2005

In its protective appeal, School District maintains the trial court erred by granting General Contractor's, Architect's and Surety's judgment motions. It claims that any damages Mechanical Contractor sustained as a result of construction delays resulted from General Contractor's or Architect's breach of contract and unspecified

negligence. Thus, School District argues it is entitled to either indemnification (breach of contract) or contribution (negligence).

Because we conclude the trial court properly granted School District's summary judgment motion, its claims for indemnification and contribution against General Contractor, Architect and Surety[10] are moot. *See Johnson.*

## IV.

### Conclusion

The trial court properly concluded no legal basis exists to set aside the "no damages for delay" clause with respect to claims the School District failed to ensure timely construction by controlling General Contractor. The trial court erred, however, in concluding School District cannot be liable for construction delays attributable to Architect as School District's representative. Nevertheless, Mechanical Contractor failed to offer sufficient evidence demonstrating Architect's actions caused construction delays for which School District is liable. Finally, the trial court properly concluded Mechanical Contractor's and School District's relationship was governed by a written agreement, and therefore, Mechanical Contractor cannot proceed on a theory of unjust enrichment. Accordingly, we affirm.

### *ORDER*

AND NOW, this 26th day of July, 2006, the Court of Common Pleas of Lehigh County is hereby **AFFIRMED.**

---

**10.** Surety's liability, if any, is derived from the performance bond with General Contractor. Since School District is not liable to Mechanical Contractor for damages, and General Contractor performed its duties under the contract, Surety's obligations under the performance bond are satisfied. Summary judgment in favor of Surety was therefore appropriate.