IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jullian De'Pierre,                          :
               Appellant          :
                                        :
      v.                                     :  No. 510 C.D. 2022
                                         :
Southeastern Pennsylvania                   :
Transportation Authority                    :  Submitted:  March 31, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                    FILED:  August 8, 2023

Jullian De'Pierre (De'Pierre) appeals from the May 4, 2022 order of the Philadelphia County Court of Common Pleas (trial court), which granted a Motion for Summary Judgment filed by Southeastern Pennsylvania Transportation Authority (SEPTA).  The issues before this Court are whether the trial court erred in concluding that SEPTA is immune from suit under the act commonly known as the Sovereign Immunity Act (Sovereign Immunity Act)[1] for injuries De'Pierre sustained when he was assaulted on a SEPTA train by two other SEPTA passengers, and whether SEPTA should have reasonably anticipated that the assault on De'Pierre would occur.  After review, we affirm the trial court.

## I.  Background

The underlying facts in this matter are not disputed.  On May 26, 2019, while traveling on SEPTA's Market-Frankford elevated subway train, De'Pierre sustained

---

[1] 42 Pa.C.S. §§ 8521-8528.

bruising injuries to his head and face following an assault by several individuals. De'Pierre reported the assault to SEPTA police after he exited the train.

On February 11, 2021, De'Pierre filed a negligence action against SEPTA asserting that it negligently failed to provide adequate safety measures on its train, including security, as well as equipment for notifying the train operator of an emergency or danger to SEPTA's passengers, safety and monitoring devices, or a call system for reporting emergencies on a train. Reproduced Record (R.R.) at 22a. De'Pierre also alleged that SEPTA negligently trained and supervised its train operator, whom SEPTA negligently entrusted to operate the train. *Id.* at 22a-23a. SEPTA generally denied the allegations and asserted sovereign immunity as a defense. *Id.* at 25a-28a.

During a February 10, 2022 deposition, De'Pierre related the events leading to the May 26, 2019 assault. De'Pierre testified that he noticed two passengers on the train looking at him and whispering "back and forth." *Id.* at 159a. De'Pierre became nervous and took photographs of the two passengers with his phone so he could identify them "in case something" happened. *Id.* at 163a. Although De'Pierre stated that he was uncomfortable and "fearful," he did not exit the train at the next stop or call 911, as he did not think anything was going to happen and the assault "happened so fast[.]" *Id.* at 160a, 163a. After De'Pierre photographed the two passengers, they approached and asked if De'Pierre "[got] enough pictures." *Id.* at 157a. When De'Pierre replied that he had, the two passengers kicked and punched him. De'Pierre "blacked out" for a period of time. *Id.* at 157a. When he woke up, the two passengers were gone. De'Pierre did not call out for help during the altercation because "[i]t happened so fast[,]" and he did not recall seeing an "emergency button" in the train car. *Id.* at 169a-70a. After exiting the train,

2

De'Pierre reported the assault to SEPTA police and received treatment for his injuries.

Two SEPTA employees also testified by deposition on February 10, 2022. Adam Washington (Washington) was a SEPTA train operator on the Market-Frankford line for 15 years, and he was employed in that capacity on May 26, 2019. Original Record (O.R.), Item No. 22, Washington Dep., 2/10/22, at 9, 12. He does not know if he operated the train on which De'Pierre was assaulted. Washington stated that each train car is equipped with emergency buttons located in the center of the car near the right and left doors. The buttons activate an intercom system that allows a passenger to communicate with the train operator. Signage is located next to each button indicating they are to be used in the event of an emergency. Each train car is also equipped with several surveillance cameras, and SEPTA employs police officers as an additional safety measure. Washington advised that the train operator is usually the only SEPTA employee on a train; however, he typically encounters one of SEPTA's police officers "at least once a day[,]" either on the train, a platform, or "walking through the hallway." *Id.* at 19, 22-23.

Washington advised that SEPTA protocol after an incident takes place on a train is to report the matter to dispatch and "go back" to the train car to "visually see" what transpired. *Id.* at 27. SEPTA requires that its train operators leave the control cabin in the event of an emergency to investigate the situation. SEPTA police or emergency services are contacted, depending on the severity of the incident. In those circumstances, Washington would wait with a victim until the police or emergency services arrived. Washington agreed that altercations occur on SEPTA's trains and buses "[a]t least once a week." *Id.* at 20, 39. Washington has

3

never been warned prior to an incident taking place; rather, he is notified after the fact. *Id.* at 28.

Charles Lawson (Lawson) testified that he began working as a SEPTA police officer in 1994, and that he currently holds the position of police inspector. O.R., Item No. 22, Lawson Dep. at 6, 11. Lawson advised that the "bulk" of a SEPTA police officer's patrol takes place on a train. *Id.* at 44. Lawson did not dispute that criminal acts take place on the Market-Frankford line; however, he advised that crime on the trains is "statistically much lower" than crime taking place in SEPTA stations, stairwells, and platforms. *Id.* at 45-46. He estimated that each train car is equipped with 10 surveillance cameras, which cover a large percentage of the car. The cameras are not able to provide 100% coverage. When a crime is reported from one of SEPTA's trains, video footage captured by the train's cameras is "automatically" downloaded when the train returns to the station. *Id.* at 21. The video footage is then obtained by the SEPTA police detective assigned to investigate the matter. Lawson advised that video footage cannot be viewed "live." *Id.* at 56.

On March 29, 2022, SEPTA filed a Motion for Summary Judgment, arguing that SEPTA was protected by sovereign immunity under the Sovereign Immunity Act and that De'Pierre could not assert a claim for the criminal acts of a third party. R.R. at 32a-35a. The trial court granted SEPTA's motion, after concluding that De'Pierre's claim did not fall within one of the enumerated exceptions to sovereign immunity set forth in subsection 8522(b) of the Sovereign Immunity Act. Although De'Pierre maintained that his negligence claim was covered by the motor vehicle exception in subsection 8522(b)(1) of the Act, the trial court noted that De'Pierre's injuries were indisputably the result of an assault perpetrated by two SEPTA passengers and not by any movement of the SEPTA train or its moving parts. The

trial court also rejected De'Pierre's argument that SEPTA should have reasonably foreseen the May 26, 2019 assault. Although Washington testified that criminal acts frequently occur on SEPTA trains, there was no indication that De'Pierre would be assaulted that day. Accordingly, as De'Pierre failed to demonstrate that SEPTA had waived immunity or that the May 26, 2019 assault was reasonably foreseeable, the trial court granted summary judgment in SEPTA's favor. This appeal followed.

## II. Issues

On appeal,[2] De'Pierre argues that the trial court erred in concluding that the vehicle liability exception in subsection 8522(b)(1) of the Sovereign Immunity Act did not apply and that SEPTA was protected by sovereign immunity. De'Pierre also argues that SEPTA should have reasonably anticipated the May 26, 2019 assault, and the trial court erred in concluding that this criminal conduct superseded SEPTA's negligence in operating the train without adequate security measures.

## III.   Discussion

Summary judgment is appropriate where the record clearly demonstrates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176 (Pa. 1999). This Court must view the record in the light most favorable to the non-moving party, resolving all doubts about the existence of a genuine issue of material fact against the moving party. *Id.*; *see Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613 (Pa. Cmwlth. 2006).

SEPTA is an agency of the Commonwealth and, as such, it may assert sovereign immunity as a defense to liability under the Sovereign Immunity Act.

---

[2] Our review of a trial court's grant summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Kaplan v. Se. Pa. Transp. Auth.*, 688 A.2d 736, 738 n.2 (Pa. Cmwlth. 1997).

*Martz v. Se. Pa. Transp. Auth.*, 598 A.2d 580 (Pa. Cmwlth. 1991). Subsection 8522(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(a), provides that sovereign immunity is waived in limited circumstances for actions against the Commonwealth that arise out of a negligent act for which damages would be recoverable from a party that could not raise sovereign immunity as a defense. One such exception concerns motor vehicle liability under subsection 8522(b)(1), 42 Pa.C.S. § 8522(b)(1), for "[t]he operation of any motor vehicle in the possession or control of a Commonwealth party." The definition of "motor vehicle" includes a vehicle operated by rail. *Id.* Subsection 8522(b) explicitly provides, however, that the exceptions to sovereign immunity only apply to "acts by a Commonwealth party[.]" 42 Pa.C.S. § 8522(b). This Court has held that this express wording "manifests that the General Assembly has not waived sovereign immunity for harm caused by third parties." *Evans v. Se. Pa. Transp. Auth.*, 613 A.2d 137, 139 (Pa. Cmwlth. 1992). Sovereign immunity is only waived under the motor vehicle exception in subsection 8522(b)(1) of the Sovereign Immunity Act "where the negligent act that caused the plaintiff's injury involved movement of the vehicle or its parts." *Robertson v. Port Auth. of Allegheny Cnty.*, 144 A.3d 980, 986 (Pa. Cmwlth. 2016). A claim that falls within the motor vehicle exception must allege that injuries "were *caused* by the movement of the vehicle, or by the movement of the part of the vehicle, or by an act that is . . . related to the operation of the vehicle[;]" it does not apply to injuries simply because they are sustained while a Commonwealth agency vehicle is in motion. *Hall v. Se. Pa. Transp. Auth.*, 596 A.2d 1153, 1156 (Pa. Cmwlth. 1991) (emphasis in original) (motor vehicle exception did not apply to injuries caused by object thrown through trolley window, even though trolley was in motion at the time). Furthermore, the criminal acts of third parties are

superseding causes that absolve a Commonwealth party from liability for harm caused thereby. *Moore v. Dep't of Just.*, 538 A.2d 111, 113 (Pa. Cmwlth. 1988).

Notwithstanding the plain language of subsection 8522(b), and this Court's precedent, De'Pierre argues that his negligence claim falls within the motor vehicle exception because the train was operating when the assault took place. De'Pierre relies on *Toombs v. Manning*, 835 F.2d 453 (3d Cir. 1987), in which the United States Court of Appeals for the Third Circuit (Third Circuit) held that an accident in which the plaintiff was struck by a SEPTA subway train after falling from the platform fell within the motor vehicle exception. Relevantly, the Third Circuit recognized that a SEPTA employee witnessed an argument between the plaintiff, Harold Toombs (Toombs), and two individuals, but did not intervene or summon the police. One of the individuals hit Toombs in the face, causing him to fall into the path of an oncoming SEPTA subway train. In holding that the motor vehicle exception applied to a negligence claim for Toombs' resulting injuries, the *Toombs* Court focused on the SEPTA employee's failure to protect Toombs from "clear danger while waiting for a train." *Id.* at 468. Instantly, De'Pierre argues that SEPTA similarly failed to provide adequate safety measures on its train, such as a "call system" or other equipment that would alert or notify train operators of an emergency or a dangerous situation involving a passenger. De'Pierre's Br. at 17.

De'Pierre's reliance on *Toombs* is misplaced, as he has not pled facts to suggest that any SEPTA employee witnessed the assault on De'Pierre and failed to respond or intervene. Furthermore, this Court explicitly rejected the reasoning of the *Toombs* Court in *Southeastern Pennsylvania Transportation Authority v. Hussey*, 588 A.2d 110 (Pa. Cmwlth. 1991). In *Hussey*, Michael Hussey (Hussey), sustained injuries during an argument that took place on the platform of a SEPTA subway

station. The argument took place in the direct sight and hearing of a SEPTA employee. Hussey filed a negligence claim against SEPTA, arguing that its employee failed to take steps to prevent an escalation of violence or to control the situation, and failed to alert police or enlist their aid. The trial court agreed with Hussey, basing its decision on *Toombs*. This Court reversed the trial court, holding that SEPTA was not subject to liability under the motor vehicle exception to sovereign immunity "for the criminal acts of third parties even if they were facilitated by the Commonwealth agency's operation of a vehicle." *Id.* at 442.

The trial court's conclusion that De'Pierre's claim does not fall within the vehicle liability exception is entirely consistent with our holding in *Hussey* and in *Evans*, a factually similar matter in which this Court declined to find liability for injuries a SEPTA passenger sustained during an altercation with three other passengers that took place on a SEPTA train. *Evans*, 613 A.2d at 139. While this Court assumed arguendo that SEPTA breached a duty of care owed to the injured passenger, Andrea Evans (Evans), we concluded that Evans could not recover from SEPTA because her injuries were not the result of a negligent act falling within one of the exceptions to sovereign immunity. Rather, Evans' injuries stemmed from an attack perpetuated by three other SEPTA passengers. This attack was a superseding cause that "absolved SEPTA of any liability for the harm suffered[.]" *Id.*

Although De'Pierre suggests that SEPTA is liable for any acts or omissions that led to the May 26, 2019 assault, the cases he cites pre-date the Sovereign Immunity Act's enactment, which became effective on December 4, 1980. This Court has held that immunity is only waived under the motor vehicle exception in subsection 8522(b)(1) for negligence in the operation of a vehicle "where the negligent act involves movement of the vehicle or some part of the vehicle."

8

*Robertson*, 144 A.3d at 986. Instantly, De'Pierre has failed to demonstrate that his injuries caused by a negligent act involving movement of the SEPTA train or the movement of its parts. His injuries stemmed solely from the assault perpetuated by other SEPTA passengers. Accordingly, the trial court properly concluded that sovereign immunity was not waived pursuant to the motor vehicle exception in subsection 8522(b)(1) of the Sovereign Immunity Act.

Next, De'Pierre argues that the trial court erred in concluding that SEPTA could not have reasonably anticipated the May 26, 2019 assault. De'Pierre maintains that the evidence supports his argument that SEPTA's safety measures are inadequate, as SEPTA merely provides an emergency call button in the middle of each train car, and both Washington and Lawson testified about the high incidences of crime occurring on SEPTA's trains. Thus, De'Pierre contends that the May 26, 2019 assault on De'Pierre was reasonably foreseeable and a jury should have decided the question of whether SEPTA negligently failed to provide greater safety precautions for its passengers.

We must reject De'Pierre's argument under the facts presented. In determining whether criminal conduct of a third party supersedes the alleged negligence of a Commonwealth agency, we look to whether the intervening conduct was so extraordinary that it was not reasonably foreseeable. *Powell v. Drumheller*, 653 A.2d 619, 623 (Pa. 1995). "Unless the facts are undisputed," the "determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury." *Id.* at 624.

In *Powell*, upon which De'Pierre relies, the widow of a man killed in a motor vehicle accident filed a wrongful death claim against the Pennsylvania Department of Transportation (DOT). The widow alleged that DOT negligently designed the

road where the accident occurred, as it had no centerline designating the lanes of travel, there were no road markings or signs that restricted passing, and the road did not have a shoulder or area to provide for emergency maneuvers. DOT argued that it was immune from suit because the driver of the car responsible for the accident was intoxicated at the time. Our Supreme Court rejected DOT's argument, as a factual dispute existed as to whether the primary cause of the accident was the driver's intoxication or the allegedly faulty design of the road, and a jury should determine whether DOT's negligence was a substantial factor in causing the accident.

The Supreme Court's holding in *Powell* relied on an earlier decision, *Crowell v. City of Philadelphia*, 613 A.2d 1178, 1184 (Pa. 1992), in which an intoxicated driver hit another car, killing its driver, after following a directional arrow that had been misplaced by a city employee. The Supreme Court upheld a verdict in favor of the plaintiff, as the jury found that the negligent misplacement of the sign was a substantial contributing cause of the accident.

We disagree with De'Pierre that an issue of material fact exists, as De'Pierre's injuries were indisputably caused by other passengers on the train, and not by the train itself, or by any movement of the train or its moving parts. In both *Powell* and *Crowell*, a factual question existed as to whether the injuries were caused by a defect in the land – i.e.: the negligent misplacement of a directional arrow or the negligent design of the road – or whether the injuries were solely caused by an intoxicated driver.

Instantly, while SEPTA's own witnesses acknowledged that criminal activity occurs on SEPTA trains, there is simply no evidence to suggest that SEPTA was aware of prior incidents on the Market-Frankford line that would have foreshadowed

10

the May 26, 2019 assault on De'Pierre. De'Pierre admitted that, although he was nervous and fearful, he did not use his cell phone to call 911 or attempt to leave the train car, because he did not believe "[any]thing was going to happen." R.R. at 163a. If De'Pierre did not anticipate the assault by other passengers, it is difficult to perceive how SEPTA personnel could have reasonably foreseen that specific event. Moreover, while Lawson acknowledged that criminal acts have occurred on the trains of that line, he also testified that incidences of crime are higher in other locations, such as train stations, stairwells, and platforms. Washington's deposition testimony demonstrates that SEPTA equipped its train with several of the security measures that De'Pierre claims were negligently absent, such as emergency buttons located on either side of each train car that, when used, activate an intercom system facilitating communication between the train operator and the passenger car. De'Pierre's lack of knowledge that the emergency buttons exist does not render them unavailable or inadequate. Additionally, each train is equipped with multiple surveillance cameras. While the footage from those cameras cannot be observed in real time, the presence of the cameras could deter crime, as well as assist with the investigation thereof.

Given that De'Pierre's injuries were solely caused by the criminal actions of third parties, and not by SEPTA's negligent operation of the train in which the May 26, 2019 assault took place, the trial court did not err in granting summary judgment in favor of SEPTA. Any other conclusion would effectively render SEPTA strictly liable for the criminal actions of a SEPTA passenger, should such conduct result in injury to another passenger. The plain language of the motor vehicle exception in

11

subsection 8522(b)(1) of the Sovereign Immunity Act does not contemplate such an expansive waiver of immunity. Accordingly, we affirm the trial court.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jullian De'Pierre,                           :
                Appellant    :
                             :
         v.                                   :    No. 510 C.D. 2022
                             :
Southeastern Pennsylvania          :
Transportation Authority              :

## O R D E R

AND NOW, this 8th day of August, 2023, the May 4, 2022 order of the Court of Common Pleas of Philadelphia County is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge